1    Matthew C. Helland, CA State Bar No. 250451
     helland@nka.com
2    NICHOLS KASTER, LLP
     235 Montgomery Street, Suite 810
3    San Francisco, CA 94104
     Telephone: (415) 277-7235
4    Facsimile: (415) 277-7238

5    Rebekah L. Bailey, CA State Bar No. 258551
     bailey@nka.com
6    Kai H. Richter, MN Bar No. 0296545*
     krichter@nka.com
7    Brock J. Specht, MN Bar No. 0388343*
     bspecht@nka.com
8    Carl F. Engstrom, MN Bar No. 0396298*
     cengstrom@nka.com
9    Jacob T. Schutz, MN Bar No. 0395648*
     jschutz@nka.com
10   NICHOLS KASTER, PLLP
      *admitted *pro hac vice*
11   4600 IDS Center
     80 South 8th Street
12   Minneapolis, MN 55402
     Telephone: (612) 256-3200
13   Facsimile: (612) 338-4878

14   *Attorneys for Plaintiffs and the proposed Class*

15                    **UNITED STATES DISTRICT COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA**
16

17   Jerry Johnson, Jesse Perry, Yolanda Weir, Karen    **Case No.** 5:16-cv-03698 NC
     White, Todd Salisbury, Peter Hitt, Patricia Collier, and
18   Verlin Laine, as representatives of the class and on
     behalf of Fujitsu Group Defined Contribution and
19   401(k) Plan,                                        **PLAINTIFFS' UNOPPOSED**
                        Plaintiffs,                      **MOTION FOR PRELIMINARY**
                                                         **APPROVAL OF CLASS ACTION**
20        v.                                             **SETTLEMENT AND**
                                                         **MEMORANDUM IN SUPPORT**
21   Fujitsu Technology and Business of America, Inc.,
     itself and as successor in interest to Fujitsu
22   Management Services of America, Inc., the Fujitsu
     Group Defined Contribution and 401(k) Plan          **Date: December 20, 2017**
23   Administrative Committee, the Fujitsu Group Defined **Time: 1:00 p.m.**
     Contribution and 401(k) Plan Investment Committee,  **Courtroom: 7**
24   Shepherd Kaplan LLC, Pete Apor, Belinda Bellamy,    **Hon. Magistrate Judge Nathanael M.**
     Sunita Bicchieri, and John Does 1-30,               **Cousins**
25
                        Defendants.
26

27

28

1

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................................... 1

MEMORANDUM IN SUPPORT.......................................................................................... 2

INTRODUCTION .................................................................................................................. 2

BACKGROUND ................................................................................................................... 3

I.   HISTORY OF THE CASE LEADING UP TO SETTLEMENT................................................. 3

    A.  Procedural History ................................................................................................ 3

        1.  Plaintiffs' Allegations ................................................................................ 3

        2.  Defendants' Motions to Dismiss................................................................ 3

        3.  Discovery .................................................................................................... 5

    B.  Mediation and Settlement .................................................................................... 5

II.  OVERVIEW OF THE SETTLEMENT TERMS ...................................................................... 6

    A.  Proposed Settlement Class .................................................................................. 6

    B.  Monetary Relief .................................................................................................... 6

    C.  Prospective Relief ................................................................................................ 8

    D.  Review by Independent Fiduciary ...................................................................... 8

    E.  Release of Claims................................................................................................. 8

    F.  Class Notice and Settlement Administration ..................................................... 8

    G.  Attorneys' Fees and Expenses ............................................................................ 9

ARGUMENT ....................................................................................................................... 10

I.   THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL.............. 10

    A.  The Settlement Is the Product of Informed, Arms'-Length Negotiations by Experienced Counsel at an Appropriate Stage of Litigation................................................. 11

    B.  The Settlement Provides for Significant Relief ............................................... 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C. Plaintiffs and the Settlement Class Faced Significant Risks and Expenses in Connection with the Litigation ............................................................................................. 14

D. The Settlement Contains No Obvious Deficiencies ............................................................ 16

E. The Settlement Treats All Class Members Fairly and Equitably ...................................... 17

II.    THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED ................................. 17

II.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ......................................................... 19

A. The Proposed Class Satisfies Rule 23(a) ........................................................................... 19

1.  Numerosity ................................................................................................................... 19

2.  Commonality ................................................................................................................ 19

3.  Typicality ..................................................................................................................... 21

4.  Adequacy ...................................................................................................................... 22

B. The Proposed Class Satisfies Rule 23(b)(1) ...................................................................... 22

CONCLUSION .................................................................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952 (9th Cir. 2013)..................................................... 19

4

5

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .............................................................. 19

6

*Angell v. City of Oakland*, 2014 WL 11369765 (N.D. Cal. Nov. 21, 2014)................................. 16

7

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975)........................................................................ 20

8

*Brotherston v. Putnam Investments, LLC,* 2017 WL 2634361 (D. Mass. June 19, 2017)........... 14

9

*Chao v. Aurora Loan Servs., LLC*, 2014 WL 4421308 (N.D. Cal. Sept. 5, 2014) ....................... 18

10

*In re Charles Schwab Corp. Secs. Litig.*, 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011)............. 11

11

*Christensen v. Hillyard, Inc.*, 2014 WL 3749523 (N.D. Cal. July 30, 2014) ............................... 16

12

13

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)...................................... 10, 18

14

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992).................................................. 10

15

*Deatrick v. Securitas Sec. Servs. USA, Inc.*, 2016 WL 1394275 (N.D. Cal. Apr. 7, 2016).... 10, 11

16

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980) ............................................. 12

17

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982).................................................................... 21

18

*In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ............................. 20

19

20

*In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122 (N.D. Cal. 2015) ................. 12

21

*Grabek v. Northrop Grumman Corp.*, 346 F. App'x 151 (9th Cir. 2009) .................................... 24

22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).......................................... 13, 19, 21, 22

23

*Kanawi v. Bechtel Corp.*, 254 F.R.D. 102 (N.D. Cal. 2008)....................................... 20, 21, 22, 23

24

*Kempen v. Matheson Tri-Gas, Inc.*, 2016 WL 4073336 (N.D. Cal. Aug. 1, 2016) ...................... 19

25

*Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559 (D. Minn. 2014) ....................................... 23, 24

26

*In re LDK Solar Sec. Litig.*, 2010 WL 3001384 (N.D. Cal. July 29, 2010)................................. 13

27

*Leigh v. Engle*, 727 F.2d 113 (7th Cir. 1984) .............................................................................. 15

28

MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL

*Main v. American Airlines, Inc.*, No. 4:16-cv-00473 (N.D. Tex. Oct. 23, 2017) ........................ 17

*Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610 (C.D. Cal. 2008) ............................................ 19

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ................................................. 13

*Moreno v. Deutsche Bank Americas Holding Corp.*,

    2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017) .................................................................... 22, 24

*In re Newbridge Networks Sec. Litig.*, 1998 WL 765724 (D.D.C. Oct. 23, 1998) ...................... 13

*In re Northrup Grumman Corp. ERISA Litig.*,

    2011 WL 3505264 (C.D. Cal. Mar. 29, 2011) ........................................................... 20, 22, 24

*In re NVIDIA Corp. Deriv. Litig.*, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ....................... 15

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,

    688 F.2d 615 (9th Cir. 1982) .......................................................................................... 10, 13

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................... 13

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ................................... 10

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ........................................................................ 24

*In re Pacific Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ..................................................... 12

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ............................................................... 18

*In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ............... 14

*Reed v. 1–800 Contacts, Inc.*, 2014 WL 29011 (S.D. Cal. Jan. 2, 2014) .................................... 13

*In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) ....................................... 13

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2009) ................................................................... 21

*Rodriguez v. West Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009) .................................................. 9, 12

*Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391 (N.D. Cal. 2005) ...................................... 21

*Spano v. Boeing,* No. 3:06-CV-00743 (S.D. Ill.) ......................................................................... 15

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .................................................................... 11

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1078 (N.D. Cal. 2007) .......................... 11, 12

*Tibble v. Edison Int'l*, 729 F.3d 1110 (9th Cir. 2013).......................................................... 3, 9, 14

*In re Toys R Us–Del., Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*,

    295 F.R.D. 438 (C.D. Cal. 2014) ......................................................................................... 13

*Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014) ........................................................................ 15

*Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) ........................................................................ 15

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,

    2017 WL 2655678 (C.D. Cal. June 15, 2017) ..................................................... 20, 21, 22, 24

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................. 19

*Wren v. RGIS Inventory Specialists*, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)...................... 15

*Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004) ....................................... 14

*Ziegler v. Conn. Gen. Life Ins. Co.*, 916 F.2d 548 (9th Cir. 1990) ................................................. 4

**Rules, Regulations, and Statutes**

75 Fed. Reg. 33830 ......................................................................................................................... 8

29 U.S.C. §§ 1104............................................................................................................................ 23

29 U.S.C. §§ 1109............................................................................................................................ 21

29 U.S.C. §§  1132............................................................................................................................ 21

Fed. R. Civ. P. 23 et.seq. .......................................................................................................... *passim*

**Other Authorities**

Manual for Complex Litigation (Fourth) § 21.632 (2004) ........................................................... 10

Prohibited Transaction Exemption 2003-39,

    68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830 ........................................................... 8

1

## NOTICE OF MOTION AND MOTION

2          PLEASE TAKE NOTICE that on December 20, 2017, at 1:00 p.m., in Courtroom 7 of the

3  United States District Court for the Northern District of California, before the Honorable

4  Magistrate Judge Nathanael M. Cousins, Plaintiffs Jerry Johnson, Jesse Perry, Yolanda Weir,

5  Karen White, Todd Salisbury, Peter Hitt, Patricia Collier, and Verlin Laine ("Plaintiffs"), as

6  representatives of the proposed Settlement Class and on behalf of Fujitsu Group Defined

7  Contribution and 401(k) Plan, will and hereby do move for preliminary approval of the parties'

8  Class Action Settlement Agreement ("Settlement" or "Settlement Agreement").[1] This motion is

9  based on this motion and memorandum, the Declaration of Kai Richter and exhibits thereto, the

10  Declarations of each of the Plaintiffs, the arguments of counsel, and all files, records, and

11  proceedings in this matter.

12          The Settlement is fair, reasonable, and adequate, and it falls within the range of possible

13  approval. It is the result of lengthy, informed, non-collusive negotiations. It has no obvious

14  deficiencies, and it treats all Class Members equitably. Moreover, the proposed Settlement Class

15  is appropriate for class certification under Federal Rule of Civil Procedure 23. Accordingly,

16  Plaintiffs seek an order: (1) preliminarily approving the Settlement Agreement; (2) certifying the

17  Settlement Class for settlement purposes; (3) approving the proposed Settlement Notices for

18  distribution to the Settlement Class; (4) appointing Plaintiffs as Class Representatives; (5)

19  appointing Plaintiffs' counsel as Class Counsel; (6) scheduling a final approval hearing; and (7)

20  granting other relief as set forth in Plaintiffs' accompanying proposed Preliminary Approval

21  Order (which is also attached as an exhibit to the Settlement Agreement). As parties to the

22  Settlement, Defendants do not oppose this motion.[2]

23  ------

[1] A copy of the Settlement Agreement is attached as Exhibit A to the Declaration of Kai H.
24  Richter ("*Richter Decl.*"). Unless otherwise indicated, all capitalized terms referenced herein have
the meaning ascribed to them in Article 2 of the Settlement Agreement.
25
[2] The Defendants include Fujitsu Technology and Business of America, Inc., itself and as
26  successor in interest to Fujitsu Management Services of America, Inc. ("Fujitsu"), the Fujitsu
Group Defined Contribution and 401(k) Plan Administrative Committee ("Administrative
27  Committee"), the Fujitsu Group Defined Contribution and 401(k) Plan Investment Committee,
Shepherd Kaplan LLC (Shepherd Kaplan"), Pete Apor, Belinda Bellamy, and Sunita Bicchieri.

28                                                        -1-

**MEMORANDUM IN SUPPORT**

**INTRODUCTION**

Plaintiffs are pleased to report that they have reached a Class Action Settlement Agreement with Defendants, which resolves Plaintiffs' putative class action claims under the Employee Retirement Income Security Act ("ERISA") relating to the Fujitsu Group Defined Contribution and 401(k) Plan ("Plan"). Under the terms of the Settlement, $14,000,000 will be paid into a common fund for the benefit of the Settlement Class, which represents over $600 per Class Member and a full 1% of all Plan assets as of the end of the most recent calendar year (both of which are meaningful recoveries for settlements of this nature). Moreover, Fujitsu has agreed to undertake a request for proposal ("RFP") process to reduce the amount of recordkeeping expenses paid by the Plan and already has voluntarily taken steps to reduce the amount of investment management fees paid by the Plan. Accordingly, the Settlement represents an excellent recovery for the class, and the alleged problems with the Plan that gave rise to this lawsuit will be addressed going forward.

This is a fair and reasonable resolution of the claims that were asserted in the action, and the Settlement falls well within the range of possible approval. The proposed Settlement was the product of hard-fought litigation and was negotiated by counsel experienced in 401(k) plan litigation under ERISA. Before reaching the Settlement, the parties exchanged thousands of pages of documents in discovery and engaged in extensive arms'-length negotiations, including two separate mediation sessions with an experienced and well-respected mediator, Hunter Hughes. The Settlement provides for significant relief to the Settlement Class, and the class release is narrowly tailored to the type of claims that were asserted under ERISA and the factual predicate for those claims. Weighed against the risks and costs of further litigation and the range of possible outcomes, the Settlement easily satisfies the standard for preliminary approval under Rule 23(e).

-2-

# BACKGROUND

## I.   HISTORY OF THE CASE LEADING UP TO SETTLEMENT

### A.   Procedural History

#### 1.   Plaintiffs' Allegations

Plaintiffs filed their Class Action Complaint on June 30, 2016. *ECF No. 1*. The central allegation of the Complaint was that Defendants failed to control Plan costs. *Id.* ¶¶ 9, 80-82. Plaintiffs alleged that the Plan's high costs were the result of a combination of actions and omissions that were imprudent and not in the best interest of Plan participants, such as: (1) utilizing higher-cost share classes of funds rather than the least expensive available share classes (*id.* ¶¶ 84-96); (2) failing to monitor and control the Plan's recordkeeping and administrative fees (*id.* ¶¶ 97-106); and (3) selecting and retaining excessively costly investments in the Plan lineup (*id.* ¶¶ 107-12). In addition, Plaintiffs alleged that Defendants imprudently selected and retained underperforming investments in the Plan, both before and during the time that Shepherd Kaplan served as the Plan's investment manager. *Id.* ¶¶ 113-35.

In 2015, Fujitsu replaced Shepherd Kaplan with a new investment manager, Callan Associates, Inc. ("Callan"). *Id.* ¶ 47 n.4. Following this transition, Callan revamped the Plan, resulting in a new iteration of the Plan's investment lineup that was available in full to participants as of the fourth quarter of 2016. *Richter Decl. ¶ 6 n.4.* Although Plaintiffs' recordkeeping claims extend throughout the entire Class Period, Plaintiffs did not claim that this revamped Plan lineup was imprudently selected or monitored. *Id.*

Based on these allegations, Plaintiffs asserted a breach of fiduciary duty claim under ERISA against all Defendants (Count I). In addition, Plaintiffs asserted a claim for failure to monitor fiduciaries against the Plan sponsor, Fujitsu, and the Plan's Administrative Committee (Count II).

#### 2.   Defendants' Motions to Dismiss

Defendants moved to dismiss the Complaint on September 30, 2016. *See ECF Nos. 58, 59*. Shortly thereafter, on November 7, 2016, Plaintiffs filed a First Amended Complaint ("FAC")

-3-

1   supplementing their allegations and providing additional details. *ECF No. 68*. Defendants then

2   renewed their efforts to dismiss the claims, filing motions to dismiss the FAC on November 23,

3   2016. *ECF Nos. 71, 72*.

4       In their motions to dismiss, Defendants argued, among other things, that Plaintiffs' breach

5   of fiduciary duty claims related to the Plan's investment lineup failed because (1) they were

6   impermissibly based on "hindsight," and (2) the fees for the Plan's investments fell within a range

7   of fees that courts have held to be reasonable as a matter of law, citing the Ninth Circuit's opinion

8   in *Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013). *ECF No. 71-1, at 20-22; ECF No.

9   72, at 8-10, 13-19*. Defendants also argued that Plaintiffs had not adequately pled the basis for

10  their recordkeeping allegations, and Shepherd Kaplan argued that those allegations did not pertain

11  to Shepherd Kaplan as the Plan's investment manager. *ECF No. 71-1, at 22; ECF No. 72, at 4,

12  23-24*. Defendants submitted certain documents and other materials that they contended (i)

13  showed that Shepherd Kaplan  selected the cheapest share class of the investments included in the

14  Plan investment lineup, once rebates to the Plan were accounted for, and (ii) indicated that the

15  Plan's expenses were not unreasonably high, as alleged in the FAC. Additionally, Fujitsu argued

16  that ERISA's statute of limitations barred any claims arising more than three years prior to the

17  filing of the complaint because the information that would have given Plaintiffs actual knowledge

18  of the factual basis for their claims was, according to Fujitsu, readily available to them. *ECF No.

19  71-1, at 9-17*.

20      On April 11, 2017, the Court denied Defendants' motions to dismiss, declining to consider

21  the documents and other materials described above, and concluding that Plaintiffs had

22  "adequately pled the causes of action for breach of fiduciary duty as to both Fujitsu defendants

23  and Shepherd Kaplan." *ECF No. 107, at 9*. Notably, however, the Court left open the possibility

24  that Defendants' arguments could dispose of Plaintiffs' claims at summary judgment or at trial.

25  For example, the Court left open the possibility that a three-year statute of limitations could

26  apply. *Id. at 4-5* (citing *Ziegler v. Conn. Gen. Life Ins. Co.*, 916 F.2d 548, 552 (9th Cir. 1990)).

27  Furthermore, although the Court determined that Plaintiffs' allegations of fiduciary breaches were

28

-4-

1    plausible, the Court made no definitive rulings that would preclude Defendants from reasserting

2    their arguments at the summary judgment stage or at trial, instead simply concluding that

3    "plaintiffs' allegations are within the realm of plausible allegations," and that "the Court can draw

4    a plausible inference that defendants failed to act prudently." *Id. at 8*.

5                    3.    Discovery

6          During the pendency of the motions to dismiss and following the Court's order denying

7    those motions, the parties engaged in discovery. Although Defendants asked to stay discovery

8    while the motions to dismiss were pending, the stay was denied. *ECF No. 65*. Instead, at the

9    direction of the Court, the parties entered into a stipulation to limit the scope of discovery while

10   the motions to dismiss were pending to certain discrete topics. *See ECF No. 66*. In keeping with

11   this stipulation, Plaintiffs served limited sets of discovery requests on Defendants on October 14,

12   2016. *Richter Decl. ¶ 13 & n.5*. Later, following the Court's denial of the motions to dismiss,

13   Plaintiffs served a more expansive set of document requests and interrogatories on May 19, 2017.

14   *Id.*.

15         In total, Defendants produced more than 12,000 of pages of documents, including, among

16   other things, meeting minutes, summary plan descriptions, Plan disclosures, communications with

17   Plan participants, financial statements, investment policy statements, fund, financial, economic,

18   and other analyses, research materials, service agreements, trust agreements, and the contract

19   between Fujitsu and Shepherd Kaplan. *Id. ¶ 13*. Defendants also served written discovery

20   requests on Plaintiffs, and Plaintiffs produced more than 2,500 pages of responsive documents.

21   *Id.*

22        **B.    Mediation and Settlement**

23         In their ADR Stipulation at the outset of the case, the parties agreed to a mediation

24   deadline of February 28, 2017. *ECF No. 42*. That deadline was later extended to March 31, 2017,[3]

25   to account for extended briefing in connection with Defendants' motions to dismiss the FAC.

26   *ECF No. 75*.

27   _____
     [3] A typo in the underlying stipulation incorrectly referred to the year as 2016. *See ECF No. 75*.

28                                        -5-

The parties jointly selected Hunter Hughes to serve as the mediator. *Richter Decl. ¶ 14*. Mr. Hughes is an experienced and well-respected mediator who has successfully resolved a number of ERISA class actions, as well as other types of cases. *Id. ¶ 14 & Ex. B*. A full-day, in-person mediation with Mr. Hughes took place on March 20, 2017. *Id. ¶ 15*. However, the first mediation was unsuccessful. *Id*.

After the Court denied Defendants' motions to dismiss, the parties agreed to a second mediation with Mr. Hughes. *Id. ¶ 16*. The second mediation took place on September 28, 2017. *Id*. Subsequent to a full day of arms'-length negotiations overseen by Mr. Hughes, the parties reached a settlement in principle. *Id*. The parties subsequently negotiated the comprehensive Settlement Agreement that is the subject of the present motion, which was fully executed on December 6, 2017. *Id. ¶ 17*.

## II.   OVERVIEW OF THE SETTLEMENT TERMS

### A.   Proposed Settlement Class

The Settlement Agreement calls for certification of a proposed Settlement Class defined as follows:

> [A]ll participants and beneficiaries of the Fujitsu Group Defined Contribution and 401(k) Plan at any time on or after June 30, 2010 through September 30, 2017, including any Beneficiary of a deceased person who was a Participant in the Plan at any time during the Class Period, and any Alternate Payees, in the case of a person subject to a Qualified Domestic Relations Order who was a Participant in the Plan at any time during the Class Period.

*Settlement Agreement ¶ 2.42*. Excluded from this class are Defendants, their directors, and any employees with fiduciary responsibility for the Plan's investment or administrative functions. *Id*. The "Class Period" is the period from June 30, 2010 through September 30, 2017. *Id. ¶ 2.12*. There are approximately 22,705 Class Members. *Richter Decl. ¶ 3*.

### B.   Monetary Relief

Under the Settlement, $14,000,000 will be paid from an escrow account arranged by the law firm of Orrick, Herrington & Sutcliffe, LLP, or as the parties may otherwise agree, into a common settlement fund (the "Qualified Settlement Fund"). *Settlement Agreement ¶ 5.4*.

-6-

Following any deductions for Court-approved attorneys' fees and costs, Class Representatives' compensation, and administrative expenses, the remainder of the common fund (the "Net Settlement Amount") will be distributed to the Settlement Class. *Id. ¶ 5.7.*

For purposes of allocating the Net Settlement Amount, each eligible Class Member will be assigned a "Settlement Allocation Score," which will be calculated by (1) determining the total balance of each participant's 401(k) account at the end of each quarter during the class period and (2) crediting ten points for every dollar in the account for those quarters through the third quarter of 2016, and one point for every dollar in the account from the fourth quarter of 2016 through the end of the Class Period.[4] *Id. ¶ 6.4.1.* Each eligible Class Member's share of the Net Settlement Amount will be proportional to his or her Settlement Allocation Score compared to the sum of all Class Members' Settlement Allocation Scores. *Id. ¶ 6.4.2.* In other words, Class Members will receive a share of the Net Settlement Amount proportionate to their weighted level of investment relative to all Class Members.

Current Plan participants will have their Plan accounts automatically credited with their share of the Settlement Fund. *Id. ¶ 6.5.* Former participants will be required to submit a claim form. This process allows them to elect to have their distribution rolled over into an individual retirement account or other eligible employer plan, or to receive a direct payment by check. *Id. ¶ 6.6.* This is consistent with other settlements, and will minimize the portion of the settlement fund paid as taxes and also minimize waste due to uncashed checks. *Richter Decl. ¶ 7.*[5] Any amount remaining in the Qualified Settlement Fund following settlement distributions to Class Members will be paid back into the Plan. *Settlement Agreement ¶ 6.12.*

---

[4] The point allocations change at the beginning of the fourth quarter of 2016 because that is when the Plan's new investment lineup was fully available following Fujitsu's removal of Shepherd Kaplan as the Plan's investment manager and the subsequent overhaul of the Plan's investment lineup. *Richter Decl. ¶ 6 n.4.* The only claims alleged in the FAC that are applicable to the period of time after the new investment lineup took effect are the claims related to recordkeeping fees. *Id.* Comparing the estimated excess recordkeeping fees to the total estimated excess fees, the Settlement Agreement's allocation utilizing a 10:1 ratio is reasonable and fair. *Id.*

[5] To further streamline settlement administration and minimize waste, *de minimus* distributions of $5.00 or less will not be made to former participants and will be reallocated. *Settlement Agreement ¶ 6.4.2.*

-7-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.     Prospective Relief

The Settlement also provides that Fujitsu will issue an RFP seeking bids for recordkeeping services, once the Settlement becomes effective. *Id. ¶ 7.1.* The purpose of this RFP will be to reduce the amount of recordkeeping expenses paid by the Plan. *Id.* Combined with the changes that Fujitsu has already made to the Plan's investment lineup, this will address the issues that Plaintiffs raised in their FAC. *Richter Decl. ¶ 8.*

### D.     Review by Independent Fiduciary

As required under ERISA, Fujitsu will retain an independent fiduciary to review the Settlement on behalf of the Plan. *Settlement Agreement ¶¶ 2.29, 3.1.1*; *see also* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830. The parties will provide the independent fiduciary with sufficient information to support the independent fiduciary's review and evaluation. *Settlement Agreement ¶ 3.1.4.* The independent fiduciary will issue its report at least 30 days prior to the fairness hearing so the Court can consider the report in determining whether to grant final approval of the Settlement. *Id. ¶ 3.1.2.*

### E.     Release of Claims

In exchange for the foregoing relief, the Settlement Class will release Defendants, the Plan, and affiliated persons and entities from all claims: (1) that were asserted or could have been asserted in the Action under Subchapter I, Subtitle B, Part 4 of ERISA, or that did or could arise out of, relate to or have been connected with the conduct alleged in the Complaint or Amended Complaint; (2) that would be barred by *res judicata* based on entry of the final approval order; (3) that relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Net Settlement Amount; or (4) that relate to the approval by the independent fiduciary of the Settlement Agreement, unless brought against the independent fiduciary alone. *Id. ¶¶ 2.37, 2.38.*

### F.     Class Notice and Settlement Administration

Class Members will be sent a direct notice of the settlement via U.S. Mail. *Id. ¶¶ 3.3.1 & Exs. 3-4.* The Settlement Notice sent to former participants will also include a claim form

-8-

1    enabling them to make the elections described above. *Id. ¶ 3.3.2 & Ex. 1*. These Settlement

2    Notices provide information to the Settlement Class regarding, among other things: (1) the nature

3    of the claims; (2) the class definition; (3) the terms of the Settlement; (4) Class Members' right to

4    object to the Settlement and the deadline for doing so; (5) the class-wide release; (6) the identity

5    of Class Counsel and the amount of compensation they will seek in connection with the

6    Settlement; (7) the amount of any requested Class Representatives' compensation; (8) the date,

7    time, and location of the final approval hearing; (9) Class Members' right to appear at the final

8    approval hearing; and (10) the process for former participants to submit claims (which is included

9    only in the former participants' notice). *Id. Exs. 3-4.*

10       For Class Members who would like more information, the Settlement Administrator[6] will

11   establish a settlement website with additional information. *Settlement Agreement ¶ 3.4*. The

12   website will contain links to important documents relating to the case, including the FAC; the

13   Settlement Agreement and exhibits thereto; the Settlement Notices; the claim form for former

14   participants; this preliminary approval motion; the motion for attorneys' fees and costs, Class

15   Representatives' compensation, and administrative expenses (when filed); any Court orders

16   related to the Settlement; and any amendments or revisions to these documents. *Id. ¶ 3.4*. In

17   addition, the Settlement Administrator will establish a toll-free telephone line that will enable

18   callers to receive recorded information relating to the Settlement and speak to a live operator if

19   necessary. *Id. ¶ 3.5.*

20       **G.    Attorneys' Fees and Expenses**

21       The Settlement Agreement provides that Class Counsel will file a motion for attorneys'

22   fees, costs, and administrative expenses at least 30 days before the deadline for objections to the

23   proposed Settlement. *Id. ¶ 8.2*. Under the Settlement, Class Counsel will limit their request for

24   attorneys' fees to no more than 25% of the common fund, plus their litigation costs and expenses

25   ─────────────────

26   [6] After a competitive bidding process, the parties selected Analytics Consulting, LLC
     ("Analytics") as the settlement administrator. *Id. ¶ 2.40*; *Richter Decl. ¶ 34*. Analytics is a
27   reputable administrator that has experience handling other ERISA settlements. *Richter Decl. ¶ 34
     & Ex. D.*

28                                                    -9-

1   of settlement administration. *Id. ¶ 8.1*. In addition, the Settlement Agreement provides that

2   service awards of up to $7,500 may be sought for the Class Representatives, subject to Court

3   approval, to compensate them for the time, effort, and risks they assumed in connection with this

4   action. *Id. ¶¶ 2.14, 8.2*; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th

5   Cir. 2015) (explaining that service awards "are fairly typical in class action cases" (quoting

6   *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009))). The Settlement Agreement is

7   not contingent on Court approval of any fees, expenses, or Class Representatives' compensation

8   that may be requested. *Settlement Agreement ¶ 11.3*.

9                                    **ARGUMENT**

10  **I.   THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL**

11          Federal Rule of Civil Procedure 23(e) requires judicial approval of any class action

12  settlement. This involves a "two-step process." *Deatrick v. Securitas Sec. Servs. USA, Inc.*, 2016

13  WL 1394275, at *3 (N.D. Cal. Apr. 7, 2016); *see also Manual for Complex Litigation* § 21.632

14  (4th ed. 2004). First, courts make a "preliminary determination" concerning the merits of the

15  settlement, and if the class action has settled prior to class certification, the propriety of certifying

16  the class. *Deatrick*, 2016 WL 1394275, at *3. Second, once notice has been directed to the class,

17  courts hold a fairness hearing and make a final determination of whether the settlement is "fair,

18  reasonable, and adequate." *Id.* at *4 (quoting Fed. R. Civ. P. 23(e)(2)).

19          The determination of whether a proposed settlement is fair falls within the sound

20  discretion of the court. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

21  However, there is a "strong judicial policy that favors settlements, particularly where complex

22  class action litigation is concerned." *Id.*; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d

23  566, 576 (9th Cir. 2004). Accordingly, the district court's role is "limited to the extent necessary

24  to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or

25  collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

26  reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n of City &*

27  *Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

28                                        -10-

In making its final fairness determination, the court will ultimately consider a number of factors, including, in pertinent part: (1) "the strength of plaintiffs' case"; (2) "the risk, expense, complexity, and likely duration of further litigation"; (3) "the amount offered in settlement"; (4) "the extent of discovery completed, and the stage of the proceedings"; and (5) "the experience and views of counsel." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). However, at the preliminary approval stage, the Court need only decide whether the settlement falls within "the range of possible approval." *Deatrick*, 2016 WL 1394275, at *4 (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). In the absence of any obvious deficiencies, preliminary approval should be granted and notice directed to the class so that class members may have a chance to be heard. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.

Consistent with the above principles, preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.* (quotation omitted). The proposed Settlement satisfies each of these requirements.

### A. The Settlement Is the Product of Informed, Arms'-Length Negotiations by Experienced Counsel at an Appropriate Stage of Litigation

As an initial matter, it is clear that "counsel negotiated in good faith and there is no evidence whatsoever of collusion." *In re Charles Schwab Corp. Secs. Litig.*, 2011 WL 1481424, at *6 (N.D. Cal. Apr. 19, 2011). The parties reached the Settlement only after two separate, full-day mediations before a well-respected and neutral mediator with extensive experience mediating ERISA cases and other class action cases. *Richter Decl. ¶ 14*. After reaching a settlement in principle at the second mediation, the parties then spent more than two months negotiating the final language of the Settlement Agreement. *Id. ¶ 17*.

The parties' positions were well-informed at the time of settlement. Before resolving the case, the parties engaged in adversarial litigation over Defendants' motions to dismiss. Thus, both sides had the opportunity to brief some of the key legal issues and had the benefit of the Court's

-11-

1    decision. By the time of Settlement, the parties also had engaged in significant discovery, and had

2    exchanged thousands of pages of documents. *Id. ¶ 13.*

3         Further, Plaintiffs were represented by experienced counsel at the bargaining table, with a

4    proven track record of success in ERISA litigation and other class action litigation. *Id. ¶¶ 19-33*

5    *& Ex. C.* Taken together, these factors strongly weigh in favor of approval of the settlement. *See*

6    *Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-

7    collusive, negotiated resolution."); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080

8    (finding that approval was appropriate where "[e]xperienced counsel on both sides, each with a

9    comprehensive understanding of the strengths and weaknesses of each party's respective claims

10   and defenses, negotiated th[e] settlement over an extended period of time"); *Ellis v. Naval Air*

11   *Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("The fact that experienced counsel involved

12   in the case approved the settlement after hard-fought negotiations is entitled to considerable

13   weight.").[7]

14         **B.    The Settlement Provides for Significant Relief**

15         The product of these serious and informed negotiations was a Settlement that provides

16   significant relief to the Class. The $14 million recovery speaks for itself. Indeed, the amount of

17   this recovery is impressive not only in the aggregate, but also when measured on a per-capita

18   basis (about $616 per Class Member) and as a percentage of Plan assets (a full 1% of Plan assets).

19   *Richter Decl. ¶ 4.* By either of these measures, the Settlement compares favorably to other recent

20   401(k) settlements. *Id.* Combined with the prospective relief that was negotiated relating to

21   recordkeeping services, and the changes that have already been made to the Plan's investment

22   menu, there is no doubt that this relief falls within the range of possible approval. *See In re*

23   *Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1133 (N.D. Cal. 2015) ("The court's

24   role is not to advocate for any particular relief, but instead to determine whether the settlement

25

26   ─────────────────
     [7] *Accord In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) (finding that "parties
     represented by competent counsel are better positioned than courts to produce a settlement that

27   fairly reflects each party's expected outcome in the litigation").

28                                        -12-

1    terms fall within a reasonable range of possible settlements, giving 'proper deference to the

2    private consensual decision of the parties' to reach an agreement rather than to continue

3    litigating." (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998))).

4         Although Plaintiffs *potentially* could have recovered even greater damages at trial, "[i]t is

5    well-settled law that a … settlement amounting to only a fraction of the potential recovery does

6    not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

7    454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) (quoting *Officers for Justice,* 688 F.2d at

8    628). Here, Plaintiffs' most aggressive measure of damages was approximately $147.8 million

9    (including excessive fees, lost investment income, and compounding), and Plaintiffs' core

10   measure of damages relating to excess fees was approximately $36.1 million. *Richter Decl. ¶ 5.*

11   When compared to either damages figure, the recovery provided by the Settlement is within the

12   range of possible approval. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D.

13   Cal. 2008) (finding settlement of $13.75 million, or just over 9% of maximum potential recovery

14   of $151.8 million, was reasonable); *In re Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2

15   (D.D.C. Oct. 23, 1998) ("[A]n agreement that secures roughly six to twelve percent of a *potential*

16   recovery ... seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec.*

17   *Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements

18   have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"). In

19   fact, courts in the Ninth Circuit routinely approve settlements that recover much smaller

20   percentages of the maximum possible damages. *See e.g.*, *In re Toys R Us–Del., Inc.–Fair &*

21   *Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014)

22   (granting final approval of a settlement recovering about 3% of maximum damages); *Reed v.*

23   *1-800 Contacts, Inc.*, 2014 WL 29011, at *6 (S.D. Cal. Jan. 2, 2014) (granting final approval of a

24   settlement recovering about 2% of maximum damages); *In re LDK Solar Sec. Litig.*, 2010 WL

25   3001384, at *2 (N.D. Cal. July 29, 2010) (granting final approval of a settlement recovering about

26   5% of damages).

27

28                                              -13-

1

**C.      Plaintiffs and the Settlement Class Faced Significant Risks and Expenses in Connection with the Litigation**

2          The $14 million Settlement that was negotiated represents a reasonable compromise in

3   light of the risks and expenses of continued litigation. As explained above, the Court's order

4   denying Defendants' motion to dismiss left open the ultimate question of whether Defendants

5   would prevail on the merits of any of their defenses. Were this case to proceed to trial,

6   Defendants would no doubt argue, as they did in their motions to dismiss, that Plaintiffs'

7   arguments relating to investment performance suffer from hindsight bias. *See ECF No. 71-1, at*

8   *20-21; ECF No. 72, at 14-16*. Although Plaintiffs strongly believe they could overcome any such

9   criticism on the particular facts of this case, they do recognize the risks posed by this argument.

10  *See Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1099 (9th Cir. 2004) (rejecting

11  Plaintiffs' arguments that fiduciaries acted imprudently, noting they were made "with 20–20

12  hindsight"). Defendants also would have reasserted their argument that the allegedly excessive

13  Plan expenses were within a reasonable range. *See ECF No. 72, at 9* (citing *Tibble*, 729 F.3d at

14  1135). Defendants also would have introduced the materials that this Court declined to consider

15  in connection with the motions to dismiss. Moreover, even if Plaintiffs had prevailed before this

16  Court, Defendants likely would have appealed any adverse judgment to the Ninth Circuit. Thus,

17  the "inherent risks of proceeding to summary judgment, trial and appeal also support the

18  settlement." *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26,

19  2007).

20         The risks of litigation are perhaps best illustrated by another recent case challenging an

21  allegedly imprudent 401(k) plan. *See Brotherston v. Putnam Investments, LLC*, 2017 WL

22  2634361 (D. Mass. June 19, 2017) (granting Defendants' motion for judgment on partial

23  findings).[8] Although the district court in *Putnam* found that the plan's fiduciaries were "no

24  paragon of diligence," it nevertheless entered judgment in favor of the defendants because it

25  found that the plaintiffs "failed to establish a prima facie case of loss" at trial. 2017 WL 2634361,

26  _____

27  [8] The judgment in *Putnam* is currently on appeal to the First Circuit. The plaintiffs in that case are also represented by Nichols Kaster, PLLP. *See Richter Decl. ¶ 9*.

28                                              -14-

at *12; *see also Leigh v. Engle*, 727 F.2d 113, 138-39 (7th Cir. 1984) (describing burden of proving defendants' profits as potentially "insurmountable"). Although Plaintiffs believe that they would have been able to prove losses to the Plan here, *Putnam* demonstrates that the risks in a case such as this are anything but hypothetical.

Moreover, even if Plaintiffs had prevailed at every stage of the litigation (i.e., won a contested class certification motion, defeated Defendants' summary judgment motions, established liability at trial, and proven a loss to the Plan), which they believe they could have, the Court still could have awarded a wide range of damages. *See In re NVIDIA Corp. Deriv. Litig.*, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) ("[E]ven a favorable judgment at trial may face post-trial motions and even if liability was established, the amount of recoverable damages is uncertain."). Damage calculations relating to 401(k) investment offerings are the subject of significant uncertainty. *See Tussey v. ABB, Inc.*, 746 F.3d 327, 338 (8th Cir. 2014) (instructing district court to "reevaluate its method of calculating the damage award, if any, for the participants' investment selection … claims"); *Tussey v. ABB, Inc.*, 850 F.3d 951, 958-61 (8th Cir. 2017), *cert. denied,* No. 17-265, 2017 WL 3594208 (U.S. Oct. 2, 2017) (remanding a second time, finding that the district court still did not adequately consider "other ways of measuring the plans' losses"). This further supports approval of the settlement in this case. *See Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *7 (N.D. Cal. Apr. 1, 2011) (noting the expense, delay, and risks associated with expert challenges and damage calculations supported settlement approval).

At a minimum, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and possibly the Ninth Circuit, which would have significantly delayed any relief to Class Members (at best), and might have resulted in no relief at all. *Richter Decl. ¶ 10*. As a case in point, the ERISA litigation in *Spano v. Boeing*, No. 3:06-CV-00743 (S.D. Ill.), another case involving an allegedly imprudent 401(k) Plan, lasted nearly a

-15-

1    decade before it was settled, and involved multiple appeals. *Richter Decl. ¶ 10.*[9] Aside from the

2    time and delay that would have been involved, the costs associated with these litigation activities

3    would have been significant. *Id.*

4            Given the substantial risks, costs, and delay that Plaintiffs and the Settlement Class faced

5    absent a settlement, the relief that was negotiated falls within the range of possible approval.

6    Indeed, as noted above, the Settlement in this case compares favorably to other recent 401(k)

7    settlements. *See id. ¶ 4.*

8            **D.      The Settlement Contains No Obvious Deficiencies**

9            The Settlement certainly does not have any obvious deficiencies. In other cases, this Court

10   has declined to grant preliminary approval to settlements that contained overly broad releases or

11   erroneous class definitions, or that were contingent on the award of attorneys' fees or class

12   representative awards. *See Christensen v. Hillyard, Inc.*, 2014 WL 3749523, at *4 (N.D. Cal. July

13   30, 2014); *Angell v. City of Oakland*, 2014 WL 11369765, at *1-2 (N.D. Cal. Nov. 21, 2014). The

14   Settlement here suffers from none of those deficiencies. The released parties are clearly defined,

15   and the scope of the release is narrowly tailored to matters relating to the litigation or settlement.

16   *Settlement Agreement ¶¶ 2.37-2.38.* The class definition is based on clear, objective criteria that

17   allow Class Members to be easily identified, *id. ¶ 2.42*, and differs from the class definition in the

18   FAC only to the extent that it includes an end date and more clearly specifies the types of

19   beneficiaries who are included, *compare id.*, *with* FAC ¶ 147.

20           Finally, the Settlement is not contingent on the Court's approval of attorneys' fees or

21   Class Representative compensation in any particular amount (or in any amount, for that matter).

22   *Settlement Agreement ¶ 11.3.* Regardless of whether the Court chooses to award the eight

23   Plaintiffs compensation for their roles as Class Representatives, every single one has indicated

24   they support the Settlement and are satisfied with the result that has been achieved. *Declarations*

25   *of Jerry Johnson* ("*Johnson Decl.*"), *Jesse Perry* ("*Perry Decl.*"), *Yolanda Weir* ("*Weir Decl.*"),

26   ───────────────────────
     [9] Notably, the recovery in this case is significantly higher than the recovery that was achieved in
27   *Boeing* after almost ten years of litigation, when measured on either a per-participant basis or as a
     percentage of total assets. *Id. ¶¶ 4, 10.*

28                                                        -16-

1  *Karen White* ("*White Decl.*"), *Todd Salisbury* ("*Salisbury Decl.*"), *Peter Hitt* ("*Hitt Decl.*"),

2  *Patricia Collier* ("*Collier Decl.*"), & *Verlin Laine* ("*Laine Decl.*"), ¶¶ 3-5. Class Counsel also

3  fully supports the Settlement and believes it is fair. *Richter Decl. ¶ 11*.

      **E.**      **The Settlement Treats All Class Members Fairly and Equitably**

5        Finally, the Settlement treats all Class Members fairly. As noted above, according to the

6  Settlement's allocation formula, all eligible Settlement Class Members will receive a pro rata

7  share of the Qualified Settlement Fund based on their average account balance. *See supra* at 7.

8  This ensures that each Class Member receives a settlement payment proportionate to their level of

9  investment in the Plan relative to all eligible Class Members. *Id.*

10        To ensure the utmost fairness in the allocation of the fund, the point allocations are

11  reduced at the beginning of the fourth quarter of 2016 to account for Fujitsu's overhaul of the

12  Plan lineup, which went into effect at that time. *See supra* at 7 n.4; *Richter Decl. ¶ 6 n.4*. A

13  similar point system was adopted in another ERISA settlement involving the American Airlines

14  401(k) plan, and recently received preliminary approval. *See Main v. American Airlines, Inc.*, No.

15  4:16-cv-00473, ECF No. 128 (N.D. Tex. Oct. 23, 2017) (preliminary approval order); *id.*, ECF

16  No. 127-2, at ¶ 6.4.1 (settlement agreement providing for ten points on the dollar for plan

17  balances in proprietary mutual funds affiliated with the plan sponsor, and one point on the dollar

18  for plan balances in non-proprietary mutual funds, given the relative strength of the claims).[10]

19  **II.**     **THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED**

20        In addition to reviewing the substance of the Parties' Settlement Agreement, the Court

21  must ensure that notice is sent in a reasonable manner to all Class Members who would be bound

22  by the proposed settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the

23  circumstances includes individual notice to all class members who can be identified through

24  reasonable effort. Fed. R. Civ. P. 23(c)(2)(B).

25        That is precisely the type of notice proposed here. The Settlement Agreement provides

---

[10] The fact that the current case did not involve conflicts of interest arising from proprietary mutual funds affiliated with the plan sponsor makes the Settlement here even more impressive.

-17-

1   that the Settlement Administrator will provide direct notice of the Settlement to Settlement Class

2   Members via first-class mail. *Settlement Agreement ¶ 3.3.1*. This type of notice is presumptively

3   reasonable. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Moreover, if any

4   Class Member's notice is returned as undeliverable, the Settlement Administrator will send it to

5   any forwarding address that is provided, or in the absence of a forwarding address, will use

6   commercially reasonable means (such as a skip-trace) to update the Class Member's address and

7   re-mail the notice. *Settlement Agreement ¶ 3.3.1*.

8       The content of the proposed Settlement Notices is also reasonable. *See id., Exs 3-4*.

9   Among other things, the Settlement Notices "describe[] the nature of the action, summarize[] the

10   terms of the settlement, identif[y] the … class[] and provide[] instruction on how to … object,

11   and [indicate] the proposed fees and expenses to be paid to Plaintiffs' counsel." *Chao v. Aurora*

12   *Loan Servs., LLC*, 2014 WL 4421308, at *6 (N.D. Cal. Sept. 5, 2014). In addition, in accordance

13   with the Northern District of California's Procedural Guidance for Class Action Settlements, the

14   Settlement Notices include the following information: (1) Class Counsel's contact information

15   (*Settlement Agreement Exs. 3-4, at 6*); (2) the URL for the settlement website (*id. at 1*);

16   (3) instructions on how to access the case docket via PACER or in person (*id. at 6*); (4) the date

17   of the final approval hearing and a statement that the date may change without further notice (*id.*

18   *at 6*); and (5) a statement advising Class Members that changes to the date or time for the final

19   fairness hearing will be posted to the settlement website (*id.*).[11]

20       To the extent that Class Members have any questions, they may obtain additional

21   information through the settlement website or telephone support line. *See Settlement Agreement*

22   *¶¶ 3.4-3.5*. This notice program is more than sufficient to meet the requirements of Fed. R. Civ.

23   P. 23 and due process, and should be approved. *See Churchill Vill.*, 361 F.3d at 575 (holding that

24   class action settlement notice is "satisfactory if it 'generally describes the terms of the settlement

25   in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be

26   ───────────────

[11] Because the Settlement Class falls under Federal Rule of Civil Procedure 23(b)(1) rather than

27   23(b)(3), the Settlement Notice need not contain information on how Class Members can opt out
    of the Settlement.

28                                                   -18-

1    heard'" (citation omitted)).

2    **III.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS**

3            Finally, the Court should certify the Settlement Class for settlement purposes under Rule

4    23. To be certified, the proposed class must satisfy each of the requirements of Rule 23(a) and, in

5    addition, must satisfy the prerequisites of one of the subparts of Rule 23(b). *Wal-Mart Stores, Inc.*

6    *v. Dukes*, 564 U.S. 338, 345 (2011). In the context of settlement, however, the Court need not

7    inquire whether a trial of the action would be manageable on a class-wide basis because "the

8    proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

9            **A.    The Proposed Class Satisfies Rule 23(a)**

10           Rule 23(a) sets forth four threshold requirements applicable to all class actions:

11   (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Id.* at 613.

12   The proposed class satisfies each of these requirements.

13                   1.    Numerosity

14           Numerosity requires that the class be "so numerous that joinder of all members is

15   impracticable." Fed. R. Civ. P. 23(a)(1). "As a general rule, classes of forty or more are

16   considered sufficiently numerous." *Kempen v. Matheson Tri-Gas, Inc.*, 2016 WL 4073336, at *5

17   (N.D. Cal. Aug. 1, 2016) (quoting *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D.

18   Cal. 2008)). Here, there are approximately 22,705 Class Members. *Richter Decl. ¶ 3.*

19                   2.    Commonality

20           Commonality requires that "there are questions of law or fact common to the class." Fed.

21   R. Civ. P. 23(a)(2). The commonality requirement is construed "permissively." *Hanlon*, 150 F.3d

22   at 1019. "All questions of fact and law need not be common to satisfy the rule. The existence of

23   shared legal issues with divergent factual predicates is sufficient, as is a common core of salient

24   facts coupled with disparate legal remedies within the class." *Id.* "[A]ll that Rule 23(a)(2) requires

25   is 'a single significant question of law of fact.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952,

26   957 (9th Cir. 2013) (emphasis omitted) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581,

27   588 (9th Cir. 2012)); *accord Dukes*, 564 U.S. at 359. Thus, commonality is satisfied where there

28

-19-

is a common question as to "whether a defendant's course of conduct is in its broad outlines actionable." *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

In an ERISA breach of fiduciary duty case such as this, "the common focus is on the conduct of *Defendants*: whether they breached their fiduciary duties to the Plan as a whole by paying excessive fees, [and] whether they made imprudent investment decisions." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 109 (N.D. Cal. 2008) (emphasis added). "In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 452 (S.D.N.Y. 2004) (citation omitted). Here, the common questions include:

- Whether Defendants selected and retained underperforming investments in the Plan lineup;
- Whether Defendants selected and retained excessively costly investment options;
- Whether Defendants failed to prudently monitor administrative and record-keeping fees;
- Whether Defendants exercised the requisite care, skill, prudence, and diligence in administering the Plan; and
- Whether Defendants acted solely in the interest of Plan participants.

In other ERISA cases involving 401(k) plans, courts routinely find that the commonality requirement is satisfied based on questions such as these. *See, e.g.*, *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2017 WL 2655678, at *4 (C.D. Cal. June 15, 2017) (finding commonality satisfied in action challenging selection and retention of proprietary investments in 401(k) plan); *In re Northrup Grumman Corp. ERISA Litig.*, 2011 WL 3505264, at *8 (C.D. Cal. Mar. 29, 2011) (noting common questions regarding "whether the Plans' fees and expenses are reasonable; [and] whether the investment options selected by Defendants have been prudent"); *Kanawi*, 254 F.R.D. at 108 (identifying numerous common questions, including whether "[t]he Plan was required to bear excessive fees," whether the Plan's underperformance impaired the assets of the

-20-

Plan's trust, and whether, "in administering the Plan, Defendants exercised the requisite care, skill, prudence and diligence").

### 3. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "Like commonality, typicality is a 'permissive' standard and 'the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff.'" *Kanawi*, 254 F.R.D. at 110 (quoting *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005)). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Thus, the typicality requirement is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009) (internal quotations and citation omitted).

The Class Representatives are typical of the class because they raise common legal claims arising from a common course of conduct by Defendants. To the extent Defendants failed to act solely in the best interests of participants, Defendants' duty of loyalty was breached with respect to the Plan as a whole. Similarly, to the extent that Defendants lacked a prudent process for managing or monitoring the Plan's investments, that process was defective with respect to the Plan as a whole.[12] Thus, typicality is satisfied. *See Kanawi*, 254 F.R.D. at 110 (typicality present where "Plaintiffs allege that Defendants breached their fiduciary duties against the Plan as a whole and against every participant in the Plan" and where "Plaintiffs assert the same injury

---

[12] Notably, "[t]hat the Plan participants may have separate individual accounts, invest in different funds, and obtain different returns on their investments (positive or negative), does not change the nature of their claims or the legal arguments they would make to prove Defendants' liability." *Urakhchin*, 2017 WL 2655678, at *5; *see also Kawani*, 254 F.R.D. at 110.

-21-

arising from the same course of conduct including, inter alia, allowing excessive fees … and maintaining imprudent investments"); *Urakhchin*, 2017 WL 2655678, at *5-6.

4.   <u>Adequacy</u>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy is met if (1) there are no conflicts of interest between the named plaintiffs and their counsel, on the one hand, and the proposed class, on the other; and (2) the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020. Both of these requirements are satisfied here.

First, the Class Representatives are not aware of any conflicts of interest between themselves and other Plan participants, and they have vowed to faithfully represent the interests of other Class Members. *Johnson Decl. ¶ 8*; *Perry Decl. ¶ 8*; *Weir Decl. ¶ 8*; *White Decl. ¶ 8*; *Salisbury Decl. ¶ 8*; *Hitt Decl. ¶ 8*; *Collier Decl. ¶ 8*; *Laine Decl. ¶ 8*. Their interests in pursuing a recovery on behalf of the Plan are aligned with the interests of the Settlement Class, and ERISA grants them the express right to sue on behalf of the Plan. *See* 29 U.S.C. §§ 1109(a), 1132(a).

Second, Class Counsel Nichols Kaster, PLLP ("Nichols Kaster") is also adequate. Class Counsel is unaware of any conflicts of interest with the Settlement Class. *Richter Decl. ¶ 33*. Nichols Kaster has extensive experience litigating class actions, including ERISA breach of fiduciary duty cases, and its attorneys are recognized as knowledgeable in this area of law. *Id. ¶¶ 19-25*; *see also Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *11 (S.D.N.Y. Sept. 5, 2017) (noting that Class Counsel from Nichols Kaster are "experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans and serve or served as counsel of record in other actions alleging breach of fiduciary duty claims under ERISA," and appointing Nichols Kaster as class counsel (internal citations omitted)).

**B.      The Proposed Class Satisfies Rule 23(b)(1)**

In addition to meeting the requirements of Rule 23(a), the proposed class also must satisfy one of the subparts of Rule 23(b). Here, the Settlement Class satisfies Rule 23(b)(1). A class may be certified under Rule 23(b)(1) if prosecuting separate actions by individual class members

-22-

would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1). "Most ERISA class action cases are certified under Rule 23(b)(1)." *In re Northrup Grumman Corp. ERISA Litig.*, 2011 WL 3505264, at *15 (quoting *Kanawi*, 254 F.R.D. at 111). Indeed, "ERISA fiduciary litigation ... presents a paradigmatic example of a (b)(1) class." *Kanawi*, 254 F.R.D. at 112 (internal brackets and citation omitted).

Here, individual adjudications would establish incompatible standards of conduct for the Defendants. Since the fiduciary duties imposed by ERISA are "duties with respect to a plan," *see* 29 U.S.C. § 1104, separate actions by individual Plan participants could lead to differing, incompatible rulings with regard to Plan management or the restoration of Plan assets. *See Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 577 (D. Minn. 2014) ("[S]eparate lawsuits by various individual Plan participants to vindicate the rights of the Plan could establish incompatible standards to govern Defendants' conduct, such as … determinations of differing 'prudent alternatives' against which to measure the proprietary investments, or an order that Defendants be removed as fiduciaries."). "In light of this risk, Plaintiffs have successfully satisfied the requirements of Rule 23(b)(1)(A)." *Kanawi*, 254 F.R.D. at 111.

For similar reasons, class certification is also appropriate under Rule 23(b)(1)(B). Any determination of Defendants' liability would necessarily adhere to the Plan as a whole and would, therefore, be dispositive of, impair, or impede the interests of other Plan members. For this reason, the Advisory Committee Notes to Rule 23 expressly recognize that class certification is appropriate under Rule 23(b)(1)(B) in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the

-23-

trust." Fed. R. Civ. P. 23, advisory committee's note to subd. (b)(1), cl. (B).

As the Supreme Court has implicitly recognized, breach of fiduciary duty cases under ERISA are "classic examples" of matters appropriate for 23(b)(1)(B) class certification. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833-34 (1999); *see also Moreno*, 2017 WL 3868803, at *8 ("Plaintiffs' action is akin to the 'classic' example contemplated by the Supreme Court in *Ortiz*: Plaintiffs allege Defendants' conduct affected members of a class of thousands similarly as each were exposed to the same investment options and seek to restore losses to the Plan's assets, which are comprised of the individual accounts that allegedly paid excessive fees."). Consistent with this authority, the overwhelming majority of courts have recognized that cases like this are properly certified under Rule 23(b)(1)(B). *See, e.g.*, *Grabek v. Northrop Grumman Corp.*, 346 F. App'x 151, 153 (9th Cir. 2009) (noting that action for breach of fiduciary duties under ERISA "appears to meet the requirements of Fed.R.Civ.P 23(a) and (b)," since breaches of trust "similarly affecting members of a large class of beneficiaries" are classic examples of cases appropriate for Rule 23(b)(1)(B) class treatment); *Urakhchin*, 2017 WL 2655678, at *8 ("[A]ny judgment on Defendants' liability would necessarily affect the determination of any claim for monetary relief for this same conduct brought by other Plan participants in any concurrent or future actions."); *Ameriprise*, 304 F.R.D. at 577 (agreeing with plaintiffs that, "as a practical matter, the adjudication of one participant's § 1132(a)(2) action will influence a subsequent adjudication of the same claims brought by another participant and … could effectively dispose of the other participants' actions on behalf of the Plan"); *In re Northrup Grumman Corp. ERISA Litig.*, 2011 WL 3505264, at *18 ("Given that plaintiffs assert … claims on behalf of the plan and allege breaches of fiduciary duty by defendants that will, if proved, affect every plan participant, the court concludes that 'prosecuting separate actions by or against individual class members would create a risk of ... adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.'" (quoting Fed. R. Civ. P. 23(b)(1)(B))). Accordingly, the Settlement Class should be certified.

-24-

1

**CONCLUSION**

2          For the foregoing reasons, the Court should enter an order: (1) preliminarily approving the

3    parties' Settlement Agreement; (2) certifying the Settlement Class for settlement purposes; (3)

4    approving the proposed Settlement Notices for distribution to the Settlement Class; (4) appointing

5    Plaintiffs as Class Representatives; (5) appointing Plaintiffs' counsel as Class Counsel; (6)

6    scheduling a final approval hearing; and (7) granting other relief as set forth in Plaintiffs'

7    accompanying proposed Preliminary Approval Order.

8                                              Respectfully Submitted,

9    Dated:  December 6, 2017                  NICHOLS KASTER, PLLP

10                                             By: /s/ *Kai H. Richter*
                                               Kai H. Richter
11                                             *Attorneys for Plaintiffs and the Proposed Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          -25-