Matthew C. Helland, CA State Bar No. 250451
helland@nka.com
NICHOLS KASTER, LLP
235 Montgomery Street, Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Rebekah L. Bailey, CA State Bar No. 258551
bailey@nka.com
Kai H. Richter, MN Bar No. 0296545*
krichter@nka.com
Brock J. Specht, MN Bar No. 0388343*
bspecht@nka.com
Carl F. Engstrom, MN Bar No. 0396298*
cengstrom@nka.com
Jacob T. Schutz, MN Bar No. 0395648*
jschutz@nka.com
NICHOLS KASTER, PLLP
 *admitted *pro hac vice*
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878

*Attorneys for Plaintiffs and the Settlement Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jerry Johnson, Jesse Perry, Yolanda Weir, Karen White, Todd Salisbury, Peter Hitt, Patricia Collier, and Verlin Laine, as representatives of the class and on behalf of Fujitsu Group Defined Contribution and 401(k) Plan,<br><br>               Plaintiffs,<br><br>     v.<br><br>Fujitsu Technology and Business of America, Inc., itself and as successor in interest to Fujitsu Management Services of America, Inc., the Fujitsu Group Defined Contribution and 401(k) Plan Administrative Committee, the Fujitsu Group Defined Contribution and 401(k) Plan Investment Committee, Shepherd Kaplan LLC, Pete Apor, Belinda Bellamy, Sunita Bicchieri, and John Does 1-30,<br><br>               Defendants. | Case No. 5:16-cv-03698 NC<br><br><br>**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT**<br><br><br>**Date: May 4, 2018**<br>**Time: 1:00 p.m.**<br>**Courtroom: 7**<br>**Hon. Magistrate Judge Nathanael M. Cousins** |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ...................................................................... vi

MEMORANDUM IN SUPPORT .............................................................................. 1

INTRODUCTION .................................................................................................. 1

BACKGROUND ................................................................................................... 2

    I.    CLAIMS ASSERTED ................................................................................... 2

    II.   DEFENDANTS' MOTIONS TO DISMISS ....................................................... 3

    III.  DISCOVERY .......................................................................................... 4

    IV.  MEDIATION, SETTLEMENT, & THE PRELIMINARY ORDER ......................... 5

    V.   WORK OF CLASS COUNSEL, THE CLASS REPRESENTATIVES, AND THIRD PARTIES ............... 6

        A.  Class Counsel .................................................................................. 6

        B.  The Class Representatives ................................................................ 6

        C.  Settlement Administration Functions Performed by Third Parties ............... 7

    VI.  AWARDS SOUGHT .................................................................................. 7

LEGAL STANDARD ............................................................................................. 8

ARGUMENT ....................................................................................................... 9

    I.    THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES .................. 9

        A.  The 25% Benchmark is an Appropriate Award in This Case ...................... 9

            1.  The Results Achieved ....................................................... 10

            2.  The Risks of Litigation ..................................................... 11

            3.  The Skill Required and the Quality of Work .......................... 13

            4.  The Contingent Nature of the Fee and the Financial Burden Carried by Class

                Counsel ............................................................................. 14

            5.  Awards Made in Similar Cases ........................................... 15

        B.  A Lodestar Cross-Check Confirms that the Fee Request is Reasonable ............... 16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

II.  THE COURTS SHOULD APPROVE THE REQUESTED EXPENSES................................................ 17

    A.  Litigation Expenses........................................................................................................... 17

    B.  Settlement Administration Expenses ............................................................................. 18

III. THE COURT SHOULD GRANT THE REQUESTED SERVICE AWARDS ...................................... 19

CONCLUSION ...................................................................................................................................... 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF AUTHORITIES**

**Cases**

*Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475 (S.D. Ill. July 17, 2015) .... 2, 13, 15, 16, 17

*Andrus v. NY Life Ins. Co.*, 1:16-cv-05698, ECF No. 83 (S.D.N.Y. June 15, 2017) ................... 15

*Beesley v. Int'l Paper Co.*, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ............................... 2, 15, 16

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015)......................... 14, 15, 16

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).......................................................................... 8

*Brotherston v. Putnam Investments, LLC*, 2017 WL 2634361 (D. Mass. June 19, 2017) 12, 13, 16

*Buccellato v. AT&T Operations, Inc.*, 2011 WL 3348055 (N.D. Cal. June 30, 2011) ................ 17

*Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008) ................................... 17

*Deatrick v. Securitas Sec. Servs. USA, Inc.*, 2016 WL 5394016 (N.D.Cal. Sept. 27, 2016) ........ 18

*Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*,

    2016 WL 5938722 (C.D. Cal. May 16, 2016) ..................................................................... 13

*Ellis v. Costco Wholesale Corp.*, 2014 WL 12641574 (N.D. Cal. May 27, 2014) ...................... 20

*George v. Kraft Foods Glob., Inc.*, 2012 U.S. Dist. LEXIS 166816 (N.D. Ill. June 26, 2012).... 15

*Hopkins v. Stryker Sales Corp.*, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) .................. 15, 16, 17

*Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879 (D. Minn. July 13, 2015) .... 2, 13, 15, 16, 20

*Kruger v. Novant Health, Inc.*,

    2016 WL 6769066 (M.D.N.C. Sept. 29, 2016).................................... 2, 11, 13, 15, 16, 17, 20

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ................................ 2, 9

*In re Marsh ERISA Litig.*, 265 F.R.D. 128 (S.D.N.Y. 2010) ........................................... 12, 13, 19

*In re NVIDIA Corp. Deriv. Litig.*, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ...................... 12

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008)..................... 10, 11, 13, 18

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ...................................... 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,

    2017 WL 2178787 (N.D. Cal. May 17, 2017) ..................................................................... 16

*Leigh v. Engle*, 727 F.2d 113 (7th Cir. 1984) ............................................................................. 12

*Loretz v. Regal Stone, Ltd.*, 756 F.Supp.2d 1203 (N.D. Cal. 2010)............................................ 20

*Main v. American Airlines, Inc.*,

    No. 4:16-cv-00473, ECF No. 138 (N.D. Tex. Feb. 21, 2018) ............................. 16, 18, 19, 20

*Martin v. Caterpillar Inc.*, 2010 U.S. Dist. LEXIS 145111 (C.D. Ill. Sept. 10, 2010)........... 15, 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Moreno v. Deutsche Bank Americas Holding Corp.*,

    2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017) ........................................................................ 14

*Nolte v. Cigna Corp.*, 2013 WL 12242015 (C.D. Ill. Oct. 15, 2013) ..................................... 15, 16

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ................................. 8, 18

*Perkins v. Linkedin Corp.*, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) .................................... 11

*Rodriguez v. West Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009) .................................................. 8, 19

*Spano v. Boeing Co.*, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ....................... 2, 15, 16, 17, 18

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ........................................................................ 11

*Steiner v. Am. Broadcasting Co.*, 248 F. Appx. 780 (9th Cir. 2007) ........................................... 17

*Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346 (4th Cir. 2014) ............................................... 13

*Theriot v. Celtic Ins. Co.*, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ................................... 18

*Tibble v. Edison Int'l*, 2017 WL 3523737 (C.D. Cal. Aug. 16, 2017) ......................................... 11

*Tibble v. Edison Int'l*, 729 F.3d 1110 (9th Cir. 2013) ..................................................................... 4

*Tussey v. ABB Inc.,* 2017 WL 6343803 (W.D. Mo. Dec. 12, 2017) ......................................... 11, 13

*Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014) ....................................................................... 12

*Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) ....................................................................... 12

*Villalpando v. Exel Direct Inc.*, 2016 WL 7785852 (N.D. Cal. Dec. 9, 2016) ............................ 20

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .................................................. 10, 17

*Will v. Gen. Dynamics Corp.*, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ......................... 15, 16

*Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536 (9th Cir. 2016) ......................................... 16

**Rules, Regulations, and Statutes**

Fed. R. Civ. P. 23(h) ....................................................................................................................... 8

**Other Authorities**

*Manual for Complex Litigation (Fourth )* § 14.121 ....................................................................... 9

Prohibited Transaction Class Exemption 2003-39, 68 Fed. Reg. 75,632, as amended (Dec. 31,

2003). .............................................................................................................................................. 6

Jacklyn Wille, *Deutsche Bank Can't Shake 401(k) Fee Lawsuit*, Bloomberg BNA

(Oct. 17, 2016) .............................................................................................................................. 14

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 4, 2018, at 1:00 p.m., in Courtroom 7 of the United States District Court for the Northern District of California, before the Honorable Magistrate Judge Nathanael M. Cousins, Plaintiffs Jerry Johnson, Jesse Perry, Yolanda Weir, Karen White, Todd Salisbury, Peter Hitt, Patricia Collier, and Verlin Laine ("Plaintiffs"), as representatives of the Settlement Class and on behalf of Fujitsu Group Defined Contribution and 401(k) Plan, will and hereby do move, pursuant to Federal Rule of Civil Procedure 23(h) and the terms of the Class Action Settlement Agreement in this action (including Article 8 and Paragraphs 2.2, 2.5, 2.14, 2.31, and 3.2.7 of the Settlement Agreement), for payment of the following amounts from the Qualified Settlement Fund: (1) attorneys' fees in the amount of $3,500,000 (25% of the $14,000,000 Gross Settlement Amount); (2) litigation costs and expenses in the amount of $43,410.76; (3) settlement administration expenses in the amount of $75,970 (including $52,470 to the Settlement Administrator, $3,500 to the Escrow Agent, and $20,000 to the Independent Fiduciary retained to evaluate the Settlement); and (4) service awards in the amount of $7,500 to each of the Class Representatives. This motion is based on the memorandum below, the accompanying Second Declaration of Kai H. Richter and exhibits thereto, the Parties' Settlement Agreement (ECF No. 128-10), the Court's Order Granting Preliminary Approval of Class Action Settlement (ECF No. 132), the arguments of counsel, and all files, records, and proceedings in this matter.

Dated: March 7, 2018

NICHOLS KASTER, PLLP

By: /s/ *Kai H. Richter*
Kai H. Richter

*Attorney for Plaintiffs and the Class*

1

## MEMORANDUM IN SUPPORT

2

## INTRODUCTION

3    In light of the Parties' Class Action Settlement[1] and the successful outcome it represents

4  for the participants and beneficiaries of the Fujitsu Group Defined Contribution and 401(k) Plan

5  ("Plan"), Plaintiffs and their counsel, Nichols Kaster, PLLP ("Class Counsel"), respectfully

6  petition the Court to award: (1) attorneys' fees to Class Counsel in the amount of $3,500,000

7  (25% of the $14,000,000 Gross Settlement Amount); (2) litigation costs and expenses in the

8  amount of $43,410.76; (3) settlement administration expenses in the amount of $75,970

9  (including $52,470 to the Settlement Administrator, $3,500 to the Escrow Agent, and $20,000 to

10  the Independent Fiduciary retained to evaluate the Settlement); and (4) service awards in the

11  amount of $7,500 to each of the Class Representatives.

12    As discussed below, Class Counsel have diligently pursued this complicated ERISA class

13  action involving one of the nation's largest 401(k) plans, and have invested significant time and

14  financial resources on behalf of the Settlement Class. As a result of their efforts, Class Counsel

15  have achieved a Settlement that provides $14 million in relief to the Class, representing more than

16  $600 per Class Member and a full 1% of all Plan assets as of the end of the most recent reported

17  year (both of which are meaningful recoveries for settlements of this nature). Moreover, Fujitsu

18  has agreed to undertake a request for proposal ("RFP") process to reduce the amount of

19  recordkeeping expenses paid by the Plan and already has voluntarily taken steps to reduce the

20  amount of investment management fees paid by the Plan. Accordingly, the Settlement represents

21  an excellent recovery for the Class, and the alleged problems with the Plan that gave rise to this

22  lawsuit will be addressed going forward. Moreover, Class Counsel was able to achieve this result

23  efficiently and effectively, bringing this matter to resolution in under two years, where other

24  similar settlements have been preceded by nearly ten years of litigation with no additional benefit.

25

26

27    [1] A copy of the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") is
docketed at ECF No. 128-10. Unless otherwise indicated, all capitalized terms referenced herein
have the meaning ascribed to them in Article 2 of the Settlement Agreement.

28

-1-

To date, Class Counsel have received no payment for their efforts in this litigation, nor have they received any reimbursement for the out-of-pocket costs that they have advanced. All compensation to Class Counsel is contingent upon the Court's award of fees and expenses as provided in the Settlement. Likewise, the named Class Representatives have not received any compensation for the time they have invested in the litigation, the benefits they have provided to the Settlement Class, or the risks they undertook in bringing this action.

In similar cases, "courts have found that '[a] one-third fee is consistent with the market rate' in a complex ERISA 401(k) fee case such as this[.]" *Kruger v. Novant Health, Inc.*, 2016 WL 6769066, *2 (M.D.N.C. Sept. 29, 2016) (citing, *inter alia*, *Spano v. Boeing Co.*, 2016 WL 3791123, *2 (S.D. Ill. Mar. 31, 2016); *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, *2 (D. Minn. July 13, 2015); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015); *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *2 (S.D. Ill. Jan. 31, 2014)). Here, Class Counsel's fee request is substantially less than the one-third "market rate" awarded in other ERISA cases, and also consistent with the 25% "benchmark" that is commonly awarded by courts in the Ninth Circuit. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Likewise, the proposed $7,500 service awards are well within the bounds of what has been approved in other ERISA cases. *See e.g., Novant Health*, 2016 WL 6769066, at *6 (approving $25,000 service awards to named plaintiffs); *Ameriprise*, 2015 WL 4246879, at *3 (same). Finally, the requested out-of-pocket expenses and settlement administration expenses are reasonable and typical for a case such as this. Accordingly, Plaintiffs and Class Counsel respectfully request that the Court grant the present motion and approve the requested distributions.

## BACKGROUND

### I.     CLAIMS ASSERTED

Plaintiffs filed their Class Action Complaint on June 30, 2016. *ECF No. 1*. Prior to filing this suit, Class Counsel conducted an in-depth investigation of the Plan's investments, the 401(k) marketplace, the costs and returns of alternative investment options, and the relationship between

-2-

Fujitsu and the Plan's former investment manager, Shepherd Kaplan LLC ("Shepherd Kaplan"). *Declaration of Kai H. Richter in Support of Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Service Awards ("Second Richter Decl.") ¶ 19*. This thorough pre-suit investigation enabled Class Counsel to draft a detailed, 54-page complaint. *See ECF No. 1*.

The central allegation of the Complaint was that the Defendants failed to control Plan costs. *ECF No. 1 at ¶¶ 9, 80-82*. Plaintiffs alleged that the Plan's high costs were the result of a combination of actions and omissions that were imprudent and not in the best interest of Plan participants, such as: (1) utilizing higher-cost share classes of funds rather than the least expensive available share classes (*id.* ¶¶ 84-96); (2) failing to monitor and control the Plan's recordkeeping and administrative fees (*id.* ¶¶ 97-106); and (3) selecting and retaining excessively costly investments for the Plan lineup (*id.* ¶¶ 107-12). In addition, Plaintiffs alleged that Defendants imprudently selected and retained underperforming investments in the Plan, both before and during the time that Shepherd Kaplan served as the Plan's investment manager. *Id.* ¶¶ 113-35.[2] Based on these allegations, Plaintiffs asserted a claim for breach of fiduciary duty under ERISA against all Defendants (Count I), and a claim for failure to monitor fiduciaries against the Plan sponsor, Fujitsu, and the Plan's Administrative Committee (Count II).

After the matter was initiated, Class Counsel continued to investigate the factual background of the case and filed a First Amended Complaint ("FAC") on November 7, 2016. *ECF No. 68*. The FAC added additional factual details supporting Plaintiffs' underlying claims based on Class Counsel's ongoing investigation of this matter; it did not assert any new causes of action or name additional parties. *See id.*

## II.   DEFENDANTS' MOTIONS TO DISMISS

Defendants each separately moved to dismiss the FAC on November 23, 2016. *ECF Nos. 71, 72*. In their motions to dismiss, Defendants argued, among other things, that Plaintiffs' breach of fiduciary duty claims related to the Plan's investment lineup failed because (1) they were

---

[2] Shepherd Kaplan was removed as investment manager in 2015, and Plaintiffs do not contend that the revamped investment lineup put in place after the removal of Shepherd Kaplan was imprudently selected or monitored.

1    impermissibly based on "hindsight," and (2) the fees for the Plan's investments fell within a range

2    of fees that courts have held to be reasonable as a matter of law, citing the Ninth Circuit's opinion

3    in *Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013). *ECF No. 71-1, at 20-22; ECF No.*

4    *72, at 8-10, 13-19*. Defendants also argued that Plaintiffs had not adequately pled the basis for

5    their recordkeeping allegations, and Shepherd Kaplan argued that those allegations did not pertain

6    to Shepherd Kaplan as the Plan's investment manager. *ECF No. 71-1, at 22; ECF No. 72, at 4,*

7    *23-24*. Additionally, Fujitsu argued that ERISA's statute of limitations barred any claims arising

8    more than three years prior to the filing of the Complaint because information that would have

9    given Plaintiffs actual knowledge of the factual basis for their claims was, according to Fujitsu,

10   readily available to them. *ECF No. 71-1, at 9-17*.

11        Class Counsel thoroughly researched the issues raised in Defendants' motions and filed

12   separate briefs opposing each motion on December 21, 2016. *See ECF No. 77, ECF No. 78*.

13   Based on the arguments that were presented, the Court denied both motions in their entirety,

14   concluding that Plaintiffs had "adequately pled the causes of action for breach of fiduciary duty as

15   to both Fujitsu defendants and Shepherd Kaplan." *ECF No. 107, at 9*.

16   **III.   DISCOVERY**

17        During the pendency of the motions to dismiss and following the Court's order denying

18   those motions, the parties engaged in extensive written discovery. In total, Defendants produced

19   more than 12,000 of pages of documents, including, among other things, meeting minutes,

20   summary plan descriptions, Plan disclosures, communications with Plan participants, financial

21   statements, investment policy statements, fund, financial, economic, and other analyses, research

22   materials, service agreements, trust agreements, and the contract between Fujitsu and Shepherd

23   Kaplan. *See Declaration of Kai H. Richter in Support of Plaintiffs' Motion for Preliminary*

24   *Approval of Class Action Settlement ("First Richter Decl.") ECF No. 128-9, ¶ 13*. Defendants

25   also served written discovery requests on Plaintiffs, and Plaintiffs collected and produced more

26   than 2,500 pages of responsive documents. *Id*. Class Counsel analyzed this documentary

27

28

1    evidence, and also engaged a consulting expert to assist with data analysis and damages

2    calculations, prior to reaching a Settlement. *Second Richter Decl. ¶ 19.*

3    **IV.    MEDIATION, SETTLEMENT, & THE PRELIMINARY ORDER**

4        In their ADR Stipulation at the outset of the case, the Parties agreed to a mediation

5    deadline of February 28, 2017. *ECF No. 42.* That deadline was later extended to March 31,

6    2017,[3] to account for extended briefing in connection with Defendants' motions to dismiss the

7    FAC. *ECF No. 75.* After that briefing was completed, the Parties participated in a full-day

8    mediation session with Hunter Hughes (a well-respected mediator)[4] in Atlanta on March 20,

9    2017. *First Richter Decl., ¶ 15.* However, the first mediation was unsuccessful. *Id.*

10       After the Court denied Defendants' motions to dismiss, the Parties agreed to participate in

11   a second mediation with Mr. Hughes. *Id. ¶ 16.* The second mediation took place on September

12   28, 2017. *Id.* Following a full day of arms'-length negotiations overseen by Mr. Hughes, the

13   parties reached a settlement in principle. *Id.* The parties then negotiated a comprehensive

14   Settlement Agreement, which was fully executed on December 6, 2017. *Id. ¶ 17.*

15       Under the Settlement, $14,000,000 will be paid into a common settlement fund

16   ("Qualified Settlement Fund"). *Settlement Agreement ¶ 5.4.* Following any deductions for Court-

17   approved attorneys' fees and costs, administrative expenses, and Class Representatives'

18   compensation, the remainder of the common fund ("Net Settlement Amount") will be distributed

19   to the Settlement Class. *Id. ¶¶ 2.31, 5.7.* The Settlement also provides that Fujitsu will issue an

20   RFP seeking bids for recordkeeping services, once the Settlement becomes effective. *Id. ¶ 7.1.*

21   The purpose of this RFP will be to reduce the amount of recordkeeping expenses paid by the

22   Plan. *Id.* Combined with the changes that Fujitsu has already made to the Plan's investment

23   lineup, this will address the issues that Plaintiffs raised in their FAC. *ECF No. 128-9, ¶ 8.*

24       Plaintiffs filed a motion seeking preliminary approval of the Settlement and certification

25   of the Settlement Class on December 6, 2017. *ECF No. 128.* The Court granted the motion on

26

27   [3] A typo in the underlying stipulation incorrectly referred to the year as 2016. *See ECF No. 75.*
     [4] Mr. Hughes is an experienced mediator who has successfully resolved a number of ERISA class
28   actions, as well as other types of cases. *First Richter Decl., ¶ 14.*

December 22, 2017. *ECF No. 132.* The Court's Order (1) preliminarily approved the Settlement; (2) scheduled a Fairness Hearing for May 4, 2018; (3) appointed Analytics Consulting, LLC ("Analytics"), as the Settlement Administrator; (4) preliminarily certified the Settlement Class; and (5) directed Settlement Notice to Class Members. *Id.* Plaintiffs are filing the present motion 30 days in advance of the deadline for objections, pursuant to Paragraph 8.2 of the Settlement and this Court's Preliminary Approval Order. *See ECF No. 132, ¶ 12.*

## V.   WORK OF CLASS COUNSEL, THE CLASS REPRESENTATIVES, AND THIRD PARTIES

### A.   Class Counsel

To date, Class Counsel have expended nearly 1,500 hours prosecuting this matter on behalf of the Plan and its participants, as described above. *Second Richter Decl. ¶ 21.* Class Counsel's work on this matter remains ongoing. Prior to the Fairness Hearing, Class Counsel will draft Plaintiffs' motion for final approval of the Settlement and respond to any objections.[5] *Id. ¶ 20.* Class Counsel also will provide any information requested by the Independent Fiduciary in connection with its required review of the Settlement on behalf of the Plan.[6] *Id.* Class Counsel will then attend the Fairness Hearing, and if final approval is granted, will supervise the distribution of payments to eligible Class Members. *Id.* In addition, Class Counsel will continue to respond to questions from Class Members and take other actions as necessary to support the Settlement until the conclusion of the Settlement Period. *Id.*

### B.   The Class Representatives

The Class Representatives also have worked to advance the interests of Class Members. Specifically, each Class Representative (1) provided information to Class Counsel prior to filing the case and reviewed the allegations in the operative complaints, (2) produced documents in response to discovery requests, (3) responded to interrogatories, (4) communicated with Class Counsel during the course of the case and remained informed about the case, (5) communicated with Class Counsel during the mediation process, and (6) discussed the Settlement with Class

---

[5] No objections have been submitted to date.
[6] Independent fiduciary review is required under Department of Labor ("DOL") guidelines. *See* Prohibited Transaction Class Exemption 2003-39, 68 Fed. Reg. 75,632, as amended (Dec. 31, 2003).

1   Counsel, read and approved the Settlement Agreement, and submitted Declarations in support of

2   the Settlement in conjunction with preliminary approval. *Second Richter Decl. ¶ 36*; *See also*

3   *ECF No. 128-1 – ECF No. 128-8.*

4        **C.**     **Settlement Administration Functions Performed by Third Parties**

5        In order to be administered and effectuated, the Settlement also requires time, resources,

6   and expertise from several non-parties.

7        Analytics, as the approved Settlement Administrator, disseminated the Settlement Notices

8   to Class Members and established the settlement website and message line. *See Second Richter*

9   *Decl., ¶ 32; Settlement Agreement ¶¶ 3.3-3.5.* Analytics also will review the Claim Forms

10  submitted by Former Participants,[7] and coordinate distribution of payments to all Class Members

11  in the event that the Settlement receives final approval. *See Settlement Agreement, Article 6.*

12       The Escrow Agent, Alerus, will hold the monies in the Qualified Settlement Fund while

13  approval of the Settlement and distributions to Class Members are pending. *Settlement Agreement*

14  *¶ 2.22 & Article 5.* Upon final approval of the Settlement, Alerus will release these funds and also

15  execute the investment and tax qualification mandates in the Settlement Agreement. *Id.*

16       Finally, the Independent Fiduciary engaged by Fujitsu will review the Settlement, and

17  independently determine whether it is in the best interest of the Plan to release its claims against

18  Defendants in exchange for the relief provided. *Settlement Agreement ¶ 3.1.* This independent

19  fiduciary review is required by DOL regulations. *See supra at* n.6. The Independent Fiduciary

20  will submit its report 30 days prior to the final approval hearing, *Settlement Agreement ¶ 3.1.2,*

21  and Plaintiffs will provide the Court with a copy upon filing their final approval motion.

22  **VI.**    **AWARDS SOUGHT**

23       In consideration of the work summarized above and the expenses associated therewith, the

24  Settlement Agreement provides that Plaintiffs may seek (1) attorneys' fees of up to 25% of the

25  Qualified Settlement Fund; (2) reasonable litigation expenses that Class Counsel incurred in

26  ───────────────────

27  [7] Current participants are not required to submit a claim form because their share of the Settlement proceeds can be automatically deposited in their 401(k) account. *Settlement Agreement ¶ 6.5.*

28

connection with this action; (3) reasonable Administrative Expenses, including the expenses of the Settlement Administrator, Escrow Agent, and Independent Fiduciary; and (4) a service award of up to $7,500 for each Class Representative. *Settlement Agreement ¶¶ 2.2, 2.5, 2.14, Article 8.* Consistent with the above, Plaintiffs seek the following amounts in connection with this motion:

- Attorneys' fees: $3,500,000
- Litigation expenses: $43,410.76
- Service awards: $60,000 total ($7,500 each)
- Settlement Administrator expense: $52,470
- Escrow Agent expense: $3,500
- Independent Fiduciary expense: $20,000

## LEGAL STANDARD

When counsel obtains a settlement for a class, courts "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, the requested distributions are authorized both under the Settlement Agreement and by applicable law.

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Courts also "assesses the litigation expenses against the entire fund so that the burden is spread proportionally among those who have benefited." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). Finally, with regard to the service awards for the Class Representatives, such awards are "fairly typical in class action cases" and are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). In summary, the requested distributions are customary in a class action suit such as this, and should be approved for the reasons set forth below.

1

## ARGUMENT

2

### I.  THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES

3   Courts typically employ one of two methods for evaluating the reasonableness of a fee

4   request. Under the "percentage-of-recovery method," the fee is calculated as a percentage of the

5   total fund secured for the benefit of the class. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d

6   935, 942 (9th Cir. 2011). Under the "lodestar" method, a reasonable fee is calculated by

7   multiplying the number of hours reasonably expended on the litigation by a reasonable hourly

8   rate. *Id.* at 941. Use of either approach is left to the district court's discretion, and under either

9   method the district court can adjust the amount upward or downward in order to ensure that the

10   award is reasonable in light of the nature and outcome of the case. *Id.* at 941-42. Because the

11   Settlement in this case provides a common fund for the benefit of the Settlement Class, the Court

12   should employ the percentage-of-recovery method. *See id.* (noting that the percentage method is

13   usually applied to common-fund settlements because "the benefit to the class is easily quantified"

14   whereas the lodestar method is preferred where the relief obtained "is often primarily injunctive

15   in nature and thus not easily monetized"). Nevertheless, under either method, the amount

16   requested is reasonable and should be approved.

17

### A.   The 25% Benchmark is an Appropriate Award in This Case

18   The Manual for Complex Litigation cites 25% to 30% as the percentage fee "often"

19   awarded to class counsel in connection with common fund settlements. *Manual for Complex*

20   *Litigation (Fourth )* § 14.121. Consistent with the Manual, the Ninth Circuit has identified "25%

21   of the fund as the 'benchmark' for a reasonable fee award." *In re Bluetooth*, 654 F.3d at 942; *see*

22   *also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("[I]n this

23   circuit, the benchmark percentage is 25%."). Courts evaluating a fee request may depart from this

24   benchmark percentage—either upward or downward—based on the unique circumstances of the

25   case, typically analyzing the following factors: "(1) the results achieved; (2) the risk of litigation;

26   (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial

27   burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Omnivision Techs.,*

28

-9-

*Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)).

Here, the requested attorneys' fees are based on the reasonable benchmark of 25% of the Settlement Fund, which is consistent with the general practice in this circuit and is ***less*** than the one-third fee that is typically awarded in similar ERISA class actions. Moreover, all five of the relevant factors confirm that the 25% benchmark percentage is reasonable and appropriate in this case. Accordingly, Plaintiffs and their counsel respectfully request that the Court approve the requested attorneys' fees.

### 1.      The Results Achieved

The $14 million Settlement in this case is an excellent outcome for the Settlement Class. As detailed in Plaintiffs' Motion for Preliminary Approval of the Settlement, this amount provides more than $600 per class member on a per-person basis, and is a full 1% of the Plan's total assets, both of which are on the high end of outcomes in similar litigation across the country. *See ECF No. 128 at 12; First Richter Decl., ¶ 4.* By comparison, several other ERISA 401(k) breach of fiduciary duty cases have settled for just a fraction of this amount: $55 per participant and .08% of plan assets (Wells Fargo), $198 per participant and .14% of plan assets (Principal), $235 per participant and .09% of plan assets (Fidelity), $270 per participant and .12% of plan assets (Boeing), and $473 per participant and .20% of plan assets (Lockheed Martin). *See ECF No. 128-9 at ¶ 4.*[8]

The Settlement also has the distinct benefit of returning funds to the Plan and Class Members promptly, so that these funds can be timely reinvested consistent with Class Members' elections without the risk, expense, and delay of similar cases. *See Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) ("early settlement of a 401(k) excessive fee

---

[8] *See also Figas v. Wells Fargo & Co.,* No. 08-cv-4546 (PAM/FLN), ECF No. 257-1 (D. Minn. Mar. 18, 2011); *Anderson v. Principal Life Ins. Co.*, No. 4:15-cv-00119-JAJ-HCA, ECF No. 23-3 (S.D. Iowa); *Bilewicz v. FMR LLC*, No. 13-10636-DJC, ECF No. 53-1 (D. Mass. July 3, 2014); *Spano v. Boeing Co.*, No. 3:06-cv-00743-DRH-DGW, ECF No. 554-1 (S.D. Ill. Nov. 5, 2015); *Abbott v. Lockheed Martin Corp.*, No. 06-701-MJR-DGW, ECF No. 491-1 (S.D. Ill. Feb. 20, 2015).

case benefits the employees and retirees in multiple ways"). As comparative examples, two other ERISA breach of fiduciary duty cases—including one such case in this Circuit—recently passed the ten-year mark. *See Tussey v. ABB Inc.,* 2017 WL 6343803, at *3 (W.D. Mo. Dec. 12, 2017) (requesting proposed findings more than ten years after suit was filed on December 29, 2006; *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed on August 16, 2007). Similarly, the litigation in *Boeing* and *Lockheed Martin* lasted nearly a decade before a settlement was reached in either case, without achieving a better result for the class on either a per-participant or percentage-of-assets basis. *See supra at* 10 & n.8.

Moreover, in addition to the favorable financial terms, the Settlement also provides prospective relief in the form of an agreement by Fujitsu to conduct an RFP seeking bids for recordkeeping services, once the Settlement becomes effective, in order to reduce the amount of recordkeeping expenses paid by the Plan in the future. *Settlement Agreement ¶ 7.1.* While the value of the RFP to Plan participants is impossible to quantify at this stage, it is designed to ensure that the Plan's ongoing recordkeeping services are provided at competitive market rates, providing "significant benefits that are not accounted for in the dollar value of the common settlement fund." *Perkins v. Linkedin Corp.*, 2016 WL 613255, at *14 (N.D. Cal. Feb. 16, 2016). Accordingly, the RFP is "a 'relevant circumstance'" in evaluating the favorable results achieved. *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003)).

In summary, the overall benefit to the Settlement Class in this case is outstanding, exceeding the financial terms of other, similar settlements, and providing valuable additional prospective relief. These results strongly support Class Counsel's fee request. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award.").

### 2. The Risks of Litigation

The risks of this type of litigation also support the requested fee. Courts have remarked on the highly risky nature of ERISA 401(k) litigation. *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. 128, 140 (S.D.N.Y. 2010) (outlining the difficult path to recovery, and risks of non-

-11-

1    recovery, faced by ERISA litigants). These risks are perhaps best illustrated by another recent

2    case challenging an allegedly imprudent 401(k) plan. *See Brotherston v. Putnam Investments,*

3    *LLC*, 2017 WL 2634361 (D. Mass. June 19, 2017) (granting Defendants' motion for judgment on

4    partial findings), *appeal docketed* (1st Cir. July 20, 2017).[9] Although the district court in *Putnam*

5    found that the plan's fiduciaries were "no paragon of diligence," it nevertheless entered judgment

6    in favor of the defendants because it found that the plaintiffs "failed to establish a prima facie

7    case of loss" at trial. 2017 WL 2634361, at *12; *see also Leigh v. Engle*, 727 F.2d 113, 138-39

8    (7th Cir. 1984) (describing burden of proving defendants' profits as potentially

9    "insurmountable"). Although Plaintiffs and their Counsel believe that they would have been able

10   to prove losses to the Plan here, *Putnam* demonstrates the risks in a case such as this are anything

11   but hypothetical.

12            Moreover, even if Plaintiffs had prevailed at every stage of the litigation (*i.e.*, won a

13   contested class certification motion, defeated Defendants' summary judgment motions,

14   established liability at trial, and proven a loss to the Plan), which they believe they could have,

15   the Court still could have awarded a wide range of damages. *See In re NVIDIA Corp. Deriv.*

16   *Litig.*, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) ("[E]ven a favorable judgment at trial

17   may face post-trial motions and even if liability was established, the amount of recoverable

18   damages is uncertain."). Damage calculations relating to 401(k) investment offerings are the

19   subject of significant uncertainty. *See Tussey v. ABB, Inc.*, 746 F.3d 327, 338 (8th Cir. 2014)

20   (vacating damages award and instructing district court to "reevaluate its method of calculating the

21   damage award, if any, for the participants' investment selection … claims"); *Tussey v. ABB, Inc.*,

22   850 F.3d 951, 958-61 (8th Cir. 2017) (remanding a second time, finding that the district court still

23   did not adequately consider "other ways of measuring the plans' losses"). Thus, "[t]he risk that

24   Plaintiffs would have recovered less, if anything, also supports granting the requested fee." *In re*

25   *Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047.

26

27   _____

28   [9] Class Counsel in this matter also represented the class in *Putnam*.

-12-

### 3.       The Skill Required and the Quality of Work

Class Counsel's fee request is also reasonable in light of the skill that is required in ERISA cases, and the quality of the work performed to date. ERISA litigation is notoriously complex, and the skill required to handle this complexity supports fee requests at or above the 25% benchmark. *See Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*, 2016 WL 5938722, at *10 (C.D. Cal. May 16, 2016) (finding that ERISA litigation requires "highly skilled counsel," supporting fee award of 30% of common fund); *see also Lockheed Martin*, 2015 WL 4398475, at *2 (ERISA 401(k) cases are "particularly complex"); *Ameriprise*, 2015 WL 4246879, at *1 ("ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation."); *In re Marsh ERISA Litig.*, 265 F.R.D. at 138 ("Many courts have recognized the complexity of ERISA breach of fiduciary duty actions."). As noted above, legal and factual questions related to loss causation, and methods for calculating loss, frequently impose challenges and create uncertainty. *See Tussey v. ABB, Inc.*, 2017 WL 6343803, at *1-3 (W.D. Mo. Dec. 12, 2017) (summarizing more than five years of post-trial briefing, including appeals, on the measure of damages resulting from a breach of the duty of loyalty in management of a 401(k) investment menu—and declaring the need for still further submissions from the parties); *Brotherston,* 2017 WL 2634361, at *11 (finding disagreement among district courts on the approach to loss causation in ERISA cases), *appeal docketed* (1st Cir. July 20, 2017); *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 361-71 (4th Cir. 2014) (reversing district court on issue of loss causation and remanding for further proceedings). Moreover, successful prosecution of ERISA 401(k) cases requires "expertise regarding industry practices" and knowledge of how to obtain and analyze relevant plan documents and financial statements. *See Novant Health*, 2016 WL 6769066, at *3.

Meeting these challenges requires counsel with specialized skills, and Class Counsel were well-suited to the challenge. As another court recently found in a similar ERISA case, "Plaintiffs' counsel are experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans[.]" *See Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *11 (S.D.N.Y. Sept. 5, 2017). Class Counsel have a demonstrated record of success in ERISA

-13-

litigation. *See Second Richter Decl., ¶¶ 7-9.* In fact, according to a recent Bloomberg BNA article, "Nichols Kaster has been the driving force" behind recent ERISA litigation over proprietary mutual funds. *Id. at ¶ 9* (citing Jacklyn Wille, *Deutsche Bank Can't Shake 401(k) Fee Lawsuit*, Bloomberg BNA (Oct. 17, 2016)). In recognition of their expertise, attorneys from Nichols Kaster have been interviewed by National Public Radio (for the program "All Things Considered"), Bloomberg, Financial Times, Investment News, Bankrate.com, and several trade publications in connection with their ERISA work. *Id.* In addition, lead counsel Kai Richter recently spoke by invitation at two national forums on ERISA Litigation. *Id.* This specialized expertise was beneficial to the class and instrumental in achieving the results that were obtained.

The quality of Class Counsel's work in this case has been commensurate with their skill level. As detailed above, Class Counsel performed a complex analysis of the Plan's investments and administrative costs over several years, drafted a highly detailed Complaint and FAC, successfully opposed two motions to dismiss, analyzed thousands of pages of documents produced in discovery, skillfully negotiated a favorable Settlement over the course of two mediations, drafted a complex Settlement Agreement, and successfully presented the Settlement for preliminary approval. Class Counsel's efficient and high-caliber work in this case supports the requested fee. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015) (25% fee award warranted where "class counsel achieved for the class a pre-certification settlement after defending several motions to dismiss, amending the complaint, engaging in significant discovery, and successfully negotiating a seven-figure settlement for the class").

### 4.    The Contingent Nature of the Fee and the Financial Burden Carried by the Class Counsel

Another relevant consideration is that Class Counsel agreed to undertake this nationwide class action against a major international corporation on a purely contingent basis, and all costs of litigating the matter, and the attendant financial risks, were borne by Class Counsel. *Second Richter Decl. ¶¶ 24, 26.* This further supports the requested 25% fee. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015) ("that class counsel had significant experience in this field and took on this matter on a contingent fee basis indicates that the 25

-14-

1    percent benchmark fee request is reasonable"); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358,

2    at *3 (N.D. Cal. Feb. 6, 2013) (upward departure from the benchmark warranted where the "case

3    was conducted on an entirely contingent fee basis against a well-represented Defendant" and

4    "[a]ll of the financial risk of litigation was therefore assumed by Class Counsel").

5                        **5.      Awards Made in Similar Cases**

6         Finally, Class Counsel's requested fee of 25% of the Qualified Settlement Fund is

7    particularly reasonable in light of the fact that fee awards in similar cases are routinely higher. As

8    a general rule, "courts have found that a one-third fee is consistent with the market rate in a

9    complex ERISA 401(k) fee case." *Novant Health*, 2016 WL 6769066, at *2 (quotation and

10   alteration omitted) (citing *Boeing*, 2016 WL 3791123, at *2; *Ameriprise*, 2015 WL 4246879, at

11   *2; *Lockheed Martin*, 2015 WL 4398475, at *2; *Int'l Paper*, 2014 WL 375432, at *2; *Nolte v.

12   Cigna Corp.*, 2013 WL 12242015 (C.D. Ill. Oct. 15, 2013); *George v. Kraft Foods Glob., Inc.*,

13   2012 U.S. Dist. LEXIS 166816, *8 (N.D. Ill. June 26, 2012); *Will v. Gen. Dynamics Corp.*, 2010

14   WL 4818174, *3 (S.D. Ill. Nov. 22, 2010); *Martin v. Caterpillar Inc.*, 2010 U.S. Dist. LEXIS

15   145111, *2-3, 17-18 (C.D. Ill. Sept. 10, 2010) (all awarding a fee of 33 1/3% of the monetary

16   recovery in 401(k) excessive fee cases)). Consistent with this authority, Nichols Kaster was

17   awarded attorneys' fees equal to one-third of the settlement fund in *Andrus v. NY Life Ins. Co.*,

18   1:16-cv-05698, ECF No. 83, at p.2, ¶1 (S.D.N.Y. June 15, 2017), and received a 30% fee award

19   in *Main v. American Airlines, Inc.*, No. 4:16-cv-00473, ECF No. 138 (N.D. Tex. Feb. 21, 2018).

20        Moreover, on an absolute basis, the requested fee award here ($3.5 million) is also

21   significantly lower than the fees awarded in the above-cited cases, including *General Dynamics*

22   ($5.05 million), *American Airlines* ($6.6 million), *Ameriprise* ($9.16 million), *Int'l Paper* ($10

23   million), *Cigna* ($11.66 million), *Novant Health* ($10.66 million), *Boeing* ($19 million),

24   *Caterpillar* ($5.5 million), and *Lockheed Martin* ($20.66 million). This further supports the

25   requested fee.

26

27

28
                                         -15-

1

**B.    A Lodestar Cross-Check Confirms that the Fee Request is Reasonable**

2      While the percentage method is preferred in cases that involve "a common settlement fund

3 with an easily quantifiable benefit to the class," a district court may still perform "a lodestar

4 cross-check to ensure the reasonableness of the award." *Bellinghausen v. Tractor Supply Co.*, 306

5 F.R.D. 245, 260 (N.D. Cal. 2015); *see also Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536,

6 547 (9th Cir. 2016) ("a cross-check is entirely discretionary" and is not required). "In order to

7 perform the lodestar cross-check, the Court calculates Class Counsel's lodestar by multiplying the

8 number of hours worked by a reasonable hourly rate." *Hopkins v. Stryker Sales Corp.*, 2013 WL

9 496358, *4 (N.D. Cal. Feb. 6, 2013). "After determining the lodestar, the Court divides the total

10 fees sought by the lodestar to arrive at a multiplier. The purpose of this multiplier is to account for

11 the risk Class Counsel assumes when they take on contingent-fee cases." *Id.* (citation omitted).[10]

12      Class Counsel's billing rates in this case range from $600 to $875 per hour for attorneys

13 with more than 10 years of experience, $325 to $575 per hour for attorneys with 10 years or less

14 experience, and $250 per hour for paralegals and clerks. *Second Richter Decl. ¶ 21.* These rates

15 are well within the ranges approved for complex class action litigation in this district. *See In re*

16 *Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 2178787, *3

17 (N.D. Cal. May 17, 2017) (adopting "billing rates ranging from $310 to $1,650 for partners, $185

18 to $850 for associates, and $125 to $450 for paralegals."). Class Counsel's billing rates also are at

19 or below the rates commonly approved in similar complex ERISA cases. *See Novant Health*,

20 2016 WL 6769066, at *4 (adopting rates of $460 to $998 per hour based on years of experience);

21 *Boeing*, 2016 WL 3791123, *3 (same); *Lockheed Martin*, 2015 WL 4398475, *3 (adopting rates

22 of $447 to $974 per hour based on years of experience).

23      Applying these rates by the hours expended on this litigation to date results in a total

24 lodestar figure of approximately $800,000,[11] or a risk multiplier of approximately 4.375. *Second*

25

26 _____
[10] As noted above, these risks are far from speculative in ERISA matters, as Class Counsel is well
27 aware having recently tried a similar case with the trial ending in a judgment in favor of the
defendants. *See Brotherston*, 2017 WL 2634361, at *12.
[11] $798,120.00, to be precise. *Second Richter Decl. ¶ 21.*

28
-16-

*Richter Decl. ¶ 21.* By the time of Final Approval, Class Counsel's lodestar is likely to exceed $850,000, *Second Richter Decl. ¶ 23*, resulting in a final risk multiplier of just over 4. Risk multipliers of up to 4 "are commonly found to be appropriate," *Hopkins*, 2013 WL 496358, at *4, and the Ninth Circuit has held that a multiplier as high as 6.85 "falls well within the range of multipliers that courts have allowed." *Steiner v. Am. Broadcasting Co.*, 248 F. Appx. 780, 783 (9th Cir. 2007). Accordingly, multipliers between 4 and 6 are not uncommon, particularly where cases settle at a relatively early phase of the litigation. *See Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1123 (C.D. Cal. 2008) (approving multiplier of approximately 5.2); *Buccellato v. AT&T Operations, Inc.*, 2011 WL 3348055, *2 (N.D. Cal. June 30, 2011) ("The resulting multiplier of 4.3 is reasonable in light of … the excellent and quick results obtained for the Class[.]"); *see also Vizcaino,* 290 F.3d at 1051 n.5 (noting that the lodestar multiplier "is merely a cross-check" and that class counsel should not necessarily "receive a lesser fee for settling a case quickly.").

Given the complexity of ERISA litigation, the outstanding and timely result obtained for the Settlement Class, and the fact that the risk multiplier is within the range approved by the Ninth Circuit, the lodestar cross-check confirms that Class Counsel's fee request is reasonable.

## II.   THE COURT SHOULD APPROVE THE REQUESTED EXPENSES

### A.   Litigation Expenses

In common fund cases, courts also "assesses the litigation expenses against the entire fund so that the burden is spread proportionally among those who have benefited." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989); *see also In re Omnivision*, 559 F.Supp.2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."). Reimbursable expenses include costs associated with "photocopying, printing, postage and messenger services, court costs, legal research on Lexis and Westlaw, experts and consultants, and the costs of travel for various attorneys and their staff throughout the case. *In re Omnivision*, 559 F.Supp.2d at 1048–49. Here, Class Counsel have incurred $43,410.76 in out-of-pocket costs for these ordinary case-related

-17-

1  expenses. *See Second Richter Decl. ¶ 27.* These expenses are reasonable and should be approved.

2  *See Theriot v. Celtic Ins. Co.*, 2011 WL 1522385, at *7 (N.D. Cal. Apr. 21, 2011) ("Class counsel

3  are entitled to reimbursement of reasonable out-of-pocket expenses.").

4      Notably, the requested expenses are only a fraction of the amount approved in many of the

5  ERISA cases cited above (*see supra* at 15-16) because of the efficient and effective manner in

6  which Class Counsel litigated this action. By way of an example, the expenses that the court

7  approved in *Boeing* totaled over $1.8 million, *see Boeing*, 2016 WL 3791123, at *4, and the

8  approved expenses in *American Airlines* (filed just 2 ½ months before this action) were over

9  $428,000. *See American Airlines*, No. 4:16-cv-00473, ECF No. 138 at 2.

10      **B.**    **Settlement Administration Expenses**

11      In addition to these litigation expenses, there are other reasonable and ordinary costs

12  associated with the administration of the Settlement, including the costs of the Settlement

13  Administrator, Escrow Agent, and Independent Fiduciary. Settlement administration expenses are

14  routinely awarded as part of the overall award of litigation expenses in connection with class

15  action settlements. *See, e.g., Deatrick v. Securitas Sec. Servs. USA, Inc.*, 2016 WL 5394016, *7

16  (N.D.Cal. Sept. 27, 2016) (allowing $195,000 in settlement administration expenses as part of

17  $2.5 million settlement). They also should be awarded here.

18      The Settlement Notice, claims review, and payment distribution services provided by

19  Analytics are essential to carry out the Settlement. The cost of providing those services ($52,470)

20  is reasonable in light of the large number of class members (22,705), and comes to approximately

21  $2.31 per class member.[12] The Escrow Agent expense of $3,500 is also reasonable in light of the

22  responsibility of handling a $14 million settlement fund. Finally, review by the Independent

23  Fiduciary is required by DOL regulations, and is deemed to be a "critically important" benefit to

24  plan participants. *See In re Marsh ERISA Litig.*, 265 F.R.D. at 139. The expense associated with

25

26

27  ───────────────

[12] Prior to retaining Analytics, Class Counsel solicited bids from five separate settlement administration firms, and Analytics had the lowest bid. *See Second Richter Decl. ¶ 30.*

28

1  this review ($20,000) represents approximately 0.1% of the Settlement Fund, and is reasonable in

2  light of time and expertise that will be required.

3          Accordingly, the requested amount of $75,970 for settlement administration expenses

4  should be approved. Both the total amount requested and the underlying components of that

5  request are in line with the expenses that were recently approved in *American Airlines*. *See*

6  *American Airlines*, No. 4:16-cv-00473, ECF No. 138 at 2 (approving $163,604 in settlement

7  administration expenses).

8  **III.     THE COURT SHOULD GRANT THE REQUESTED SERVICE AWARDS**

9          Finally, the requested Class Representative service awards are also reasonable for

10 litigation of this type, and should be approved. As the Ninth Circuit has noted, these awards are

11 "fairly typical in class action cases" and are "intended to compensate class representatives for

12 work done on behalf of the class, to make up for financial or reputational risk undertaken in

13 bringing the action, and, sometimes, to recognize their willingness to act as a private attorney

14 general." *Rodriguez*, 563 F.3d at 958-59.

15         There is no question that the Class Representatives are entitled to compensation here.

16 They have fulfilled their duties throughout this litigation by (among other things) assisting with

17 Counsel's investigation, responding to discovery, producing documents, consulting with Class

18 Counsel during settlement negotiations, and submitting Declarations in support of the Settlement.

19 *See Second Richter Decl. ¶ 36*; *See also ECF No. 128-1 – ECF No. 128-8.* They also assumed

20 significant risks by suing a large multinational company with whom many of them remain

21 employed. Finally, without their willingness to step forward as private attorneys general, the

22 result in this case never would have been achieved.

23         As to the amounts requested, service awards of $7,500 are well below the amounts

24 approved in similar ERISA cases, which generally range from $10,000 to $25,000. *See, e.g.,*

25 *Novant Health*, 2016 WL 6769066, at *6 (approving $25,000 service awards to named plaintiffs);

26 *Ameriprise*, 2015 WL 4246879, at *3 (same); *American Airlines*, No. 4:16-cv-00473, ECF No.

27 138 at 2 (approving service awards of $10,000 each). The requested amounts are also in-line with

28

-19-

1   awards in other cases in this district. *See, e.g., Villalpando v. Exel Direct Inc.*, 2016 WL 7785852,

2   *1 (N.D. Cal. Dec. 9, 2016) ("the requested $15,000 service awards are reasonable and

3   warranted"); *Ellis v. Costco Wholesale Corp.*, 2014 WL 12641574, *2 (N.D. Cal. May 27, 2014)

4   (awarding "service payments of $10,000 each"); *Loretz v. Regal Stone, Ltd.*, 756 F.Supp.2d 1203,

5   1217 (N.D. Cal. 2010) (approving award of "$7500 to each of the five Named Plaintiffs"). In

6   comparison to the total size of the Settlement, those amounts represent less than one half of one

7   percent of the Qualified Settlement Fund in the aggregate, and just over 0.05% individually.

8   Accordingly, Plaintiffs request that the Court approve these awards, although their support for the

9   Settlement is in no way conditioned upon approval of this request.

10                                          **CONCLUSION**

11          For the foregoing reasons, Plaintiffs respectfully request that the Court award the

12   following: (1) attorneys' fees in the amount of $3,500,000 (25% of the Gross Settlement

13   Amount); (2) litigation costs and expenses in the amount of $43,410.76; (3) settlement

14   administration expenses in the amount of $75,970 (including $52,470 to the Settlement

15   Administrator, $3,500 to the Escrow Agent, and $20,000 to the Independent Fiduciary); and (4)

16   service awards in the amount of $7,500 to each of the named Class Representatives.

17

18                                  Respectfully Submitted,

19   Dated: March 7, 2018            NICHOLS KASTER, PLLP

20                                   By: /s/ *Kai H. Richter*

21                                   Kai H. Richter
                                     *Attorney for Plaintiffs and the Proposed Class*

22

23

24

25

26

27

28