Matthew C. Helland, CA State Bar No. 250451
helland@nka.com
NICHOLS KASTER, LLP
235 Montgomery Street, Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Rebekah L. Bailey, CA State Bar No. 258551
bailey@nka.com
Kai H. Richter, MN Bar No. 0296545*
krichter@nka.com
Brock J. Specht, MN Bar No. 0388343*
bspecht@nka.com
Carl F. Engstrom, MN Bar No. 0396298*
cengstrom@nka.com
Jacob T. Schutz, MN Bar No. 0395648*
jschutz@nka.com
NICHOLS KASTER, PLLP
 *admitted *pro hac vice*
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878

*Attorneys for Plaintiffs and the Settlement Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jerry Johnson, Jesse Perry, Yolanda Weir, Karen White, Todd Salisbury, Peter Hitt, Patricia Collier, and Verlin Laine, as representatives of the class and on behalf of Fujitsu Group Defined Contribution and 401(k) Plan,<br><br>                  Plaintiffs,<br><br>      v.<br><br>Fujitsu Technology and Business of America, Inc., itself and as successor in interest to Fujitsu Management Services of America, Inc., the Fujitsu Group Defined Contribution and 401(k) Plan Administrative Committee, the Fujitsu Group Defined Contribution and 401(k) Plan Investment Committee, Shepherd Kaplan LLC, Pete Apor, Belinda Bellamy, Sunita Bicchieri, and John Does 1-30,<br><br>                  Defendants. | Case No. 5:16-cv-03698 NC<br><br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**<br><br><br>**Date: May 4, 2018**<br>**Time: 1:00 p.m.**<br>**Courtroom: 7**<br>**Hon. Magistrate Judge Nathanael M. Cousins** |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION .................................................................................... v

MEMORANDUM IN SUPPORT.............................................................................................. 1

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 1

I.      CLAIMS .......................................................................................................................... 1

        A.  Plaintiffs' Allegations ..................................................................................... 1

        B.  Motion Practice ................................................................................................ 2

II.     DISCOVERY ................................................................................................................... 3

III.    MEDIATION ................................................................................................................... 3

IV.     SETTLEMENT TERMS ................................................................................................. 4

        A.  Monetary Relief ............................................................................................... 4

        B.  Prospective Relief ............................................................................................ 5

        C.  Release of Claims ............................................................................................. 5

V.      PRELIMINARY APPROVAL OF THE SETTLEMENT ............................................. 6

VI.     CLASS NOTICE AND REACTION TO SETTLEMENT.............................................. 6

VII.    REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY ............................... 7

LEGAL STANDARD................................................................................................................ 8

ARGUMENT ............................................................................................................................ 9

I.      THE SETTLEMENT SHOULD BE APPROVED ......................................................... 9

        A.  The Settlement Provides Substantial Relief to the Settlement Class ........................... 9

        B.  The Settlement Properly Reflects Both the Strength of the Claims and the Risks of
            Further Litigation ......................................................................................... 11

        C.  The Extent of Discovery Completed and the Stage of the Proceedings .................... 13

        D.  The Experience and Views of Counsel and the Reaction of Class Members to the
            Proposed Settlement..................................................................................... 14

II.     THE CLASS NOTICE WAS REASONABLE ............................................................ 15

III.    CONCLUSION.............................................................................................................. 16

1

2

### TABLE OF AUTHORITIES

**Cases**

*Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475 (S.D. Ill. July 17, 2015) .................... 12, 13

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)................................8

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)....................................8

*Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008) ................................. 10

*Curtis-Bauer v. Morgan Stanley & Co., Inc.* 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ....... 11

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980) ............................................ 14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)........................................................... 11

*In re Animation Workers Antitrust Litig.*, 2016 WL 6841655 (N.D. Cal. Nov. 11, 2016) ............ 9

*In re Charles Schwab Corp. Secs. Litig.*, 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011)............... 8

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) .................. 1, 15

*In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122 (N.D. Cal. 2015) ................ 11

*In re LDK Solar Sec. Litig.*, 2010 WL 3001384 (N.D. Cal. July 29, 2010)................................. 10

*In re Marsh ERISA Litig.*, 265 F.R.D. 128 (S.D.N.Y. 2010) ...................................................... 15

*In re Newbridge Networks Sec. Litig.*, 1998 WL 765724 (D.D.C. Oct. 23, 1998) ...................... 10

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008)................................. 10, 15

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ................................ 8, 16

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ........................................................ 14

*In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ............... 13

*In re Quintus Sec. Litig.*, 2006 WL 3507936 (N.D. Cal. Dec. 5, 2006)....................................... 15

*In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) ...................................... 10

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................. 14

*In re Toys R Us–Del., Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*,

    295 F.R.D. 438 (C.D. Cal. 2014) .......................................................................... 10

*In Re Worldcom, Inc. ERISA Litig.,* 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004)..................... 13

*Krueger v. Ameriprise Financial, Inc.*, 2015 WL 4246879 (D. Minn. July 13, 2015) ................ 13

*Kruger v. Novant Health, Inc.*, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016)......................... 13

*Lee v. JPMorgan Chase & Co.*, 2015 WL 12711659 (C.D. Cal. Apr. 28, 2015) ......................... 10

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)................................................ 13

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................... 10, 14

-iii-

*In re NVIDIA Corp. Deriv. Litig.*, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ...................... 12

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615 (9th Cir. 1982) ..................................... 8

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985)................................................................. 15

*Reed v.1-800 Contacts, Inc.*, 2014 WL 29011 (S.D. Cal. Jan. 2, 2014) ...................................... 10

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*,

    281 F. Supp. 3d 833 (N.D. Cal. 2017) .................................................................................. 14

*Tibble v. Edison Int'l*, 729 F.3d 1110 (9th Cir. 2013)............................................................. 2, 12

*Tibble v. Edison Int'l*, 2017 WL 3523737 (C.D. Cal. Aug. 16, 2017) ........................................ 13

*Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370 (9th Cir.1993).................................................... 9

*Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014) ...................................................................... 12

*Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) ...................................................................... 12

*Tussey v. ABB Inc.,* 2017 WL 6343803 (W.D. Mo. Dec. 12, 2017) ........................................... 13

*Wren v. RGIS Inventory Specialists*, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)..................... 12

*Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004) ...................................... 12

**Rules, Regulations, and Statutes**

Fed. R. Civ. P. 23(c)(2)(B)........................................................................................................... 15

Fed. R. Civ. P. 23(e) ....................................................................................................................... 8

**Other Authorities**

Manual for Complex Litigation § 30.41 (3d ed. 1995)................................................................... 8

5 Moore's Federal Practice, § 23.85[2][e] (Matthew Bender 3d ed.)........................................... 14

Prohibited Transaction Exemption 2003-39,

    68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830 ........................................................... 7

Restatement (Third) of Trusts, § 100 cmt. b(1) (2012)................................................................. 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 4, 2018, at 1:00 p.m., in Courtroom 7 of the United States District Court for the Northern District of California, before the Honorable Magistrate Judge Nathanael M. Cousins, Plaintiffs Jerry Johnson, Jesse Perry, Yolanda Weir, Karen White, Todd Salisbury, Peter Hitt, Patricia Collier, and Verlin Laine ("Plaintiffs"), as representatives of the Settlement Class and on behalf of the Fujitsu Group Defined Contribution and 401(k) Plan, will and hereby do move, pursuant to Federal Rule of Civil Procedure 23(e), for an order granting final approval of the Parties' proposed Class Action Settlement Agreement. This motion is based on the memorandum below, the accompanying Declaration of Kai H. Richter and exhibits thereto, the Declaration of Michelle Kopperud and exhibits attached thereto, the Parties' Settlement Agreement (ECF No. 128-10), the Court's Order Granting Preliminary Approval of Class Action Settlement (ECF No. 132), the arguments of counsel, and all files, records, and proceedings in this matter.

Dated: April 20, 2018

NICHOLS KASTER, PLLP

By: /s/ *Kai H. Richter*
Kai H. Richter

*Attorney for Plaintiffs and the Settlement Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM IN SUPPORT**

**INTRODUCTION**

On December 22, 2017, this Court preliminarily approved the Parties' Class Action Settlement Agreement,[1] which resolves Plaintiffs' claims against Defendants under ERISA relating to the Fujitsu Group Defined Contribution and 401(k) Plan ("Plan").[2] *See ECF No. 132*. The Court found on a preliminary basis that the terms of the Settlement Agreement are "sufficiently fair, reasonable, and adequate to warrant sending notice of the Settlement to the Settlement Class," *id. at p. 3, ¶ 1(D)*, and approved the distribution of the Settlement Notices as specified in the Settlement Agreement. Since that time, out of more than 22,700 Settlement Class Members, none have objected to the Settlement, and an independent fiduciary has reviewed the Settlement and confirmed that its terms are fair, reasonable, and adequate. *See Declaration of Kai H. Richter in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Third Richter Decl."), ¶¶ 3-4.* Accordingly, Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement. As parties to the Settlement, Defendants do not oppose this motion.

**BACKGROUND**

**I.    CLAIMS**

**A.    Plaintiffs' Allegations**

Plaintiffs filed their Class Action Complaint ("Complaint") on June 30, 2016, on behalf of themselves and the Fujitsu Group Defined Contribution and 401(k) Plan ("Plan"), as well as on behalf of participants and beneficiaries of the Plan during the statutory period. *ECF No. 1*. The central allegation of the Complaint was that Defendants failed to control Plan costs. *Id. at ¶¶ 9,*

---

[1] A copy of the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") is docketed at ECF No. 128-10. Unless otherwise indicated, all capitalized terms referenced herein have the meaning ascribed to them in Article 2 of the Settlement Agreement.

[2] The Defendants to the action are Fujitsu Technology and Business of America, Inc., itself and as successor in interest to Fujitsu Management Services of America, Inc. ("Fujitsu"), the Fujitsu Group Defined Contribution and 401(k) Plan Administrative Committee ("Administrative Committee"), the Fujitsu Group Defined Contribution and 401(k) Plan Investment Committee ("Investment Committee"), Shepherd Kaplan LLC ("Shepherd Kaplan"), Pete Apor, Belinda Bellamy, and Sunita Bicchieri.

-1-

*80-82*. Plaintiffs alleged that the Plan's high costs were the result of a combination of actions and omissions that were imprudent and not in the best interest of Plan participants, such as: (1) utilizing higher-cost share classes of funds rather than the least expensive available share classes (*id. ¶¶ 84-96*); (2) failing to monitor and control the Plan's recordkeeping and administrative fees (*id. ¶¶ 97-106*); and (3) selecting and retaining excessively costly investments for the Plan lineup (*id. ¶¶ 107-12*). In addition, Plaintiffs alleged that Defendants imprudently selected and retained underperforming investments in the Plan. *Id.* ¶¶ 113-35. Based on these allegations, Plaintiffs asserted a claim for breach of fiduciary duty under ERISA against all Defendants (Count I), and a claim for failure to monitor fiduciaries against the Plan sponsor, Fujitsu, and the Plan's Administrative Committee (Count II).

Plaintiffs filed a First Amended Complaint ("FAC") on November 7, 2016. *ECF No. 68*. The FAC added additional factual details supporting Plaintiffs' underlying claims based on Class Counsel's ongoing investigation of this matter; it did not assert any new causes of action or name additional parties. *See id.*

**B.     Motion Practice**

Defendants moved to dismiss the FAC on November 23, 2016. *ECF Nos. 71, 72*. In their motions to dismiss, Defendants argued, among other things, that Plaintiffs' breach of fiduciary duty claims related to the Plan's investment lineup failed because (1) they were impermissibly based on "hindsight," and (2) the fees for the Plan's investments fell within a range of fees that courts have held to be reasonable as a matter of law, citing the Ninth Circuit's opinion in *Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013). *ECF No. 71-1, at 20-22; ECF No. 72, at 8-10, 13-19*. Defendants also argued that Plaintiffs had not adequately pled the basis for their recordkeeping allegations, and Shepherd Kaplan argued that those allegations did not pertain to Shepherd Kaplan as the Plan's investment manager. *ECF No. 71-1, at 22; ECF No. 72, at 4, 23-24*. In addition, Fujitsu argued that ERISA's statute of limitations barred any claims arising more than three years prior to the filing of the Complaint because information that would have given

-2-

1   Plaintiffs actual knowledge of the factual basis for their claims was, according to Fujitsu, readily

2   available to them. *ECF No. 71-1, at 9-17*.

3       The Court denied the motions to dismiss on April 11, 2017. *ECF No. 107*. In denying the

4   motions, the Court concluded that Plaintiffs had "adequately pled the causes of action for breach

5   of fiduciary duty as to both Fujitsu defendants and Shepherd Kaplan." *Id. at 9*.

6   **II.   DISCOVERY**

7       During the pendency of the motions to dismiss and following the Court's order denying

8   those motions, the parties engaged in extensive written discovery. In total, Defendants produced

9   more than 12,000 of pages of documents, including, among other things, meeting minutes,

10   summary plan descriptions, Plan disclosures, communications with Plan participants, financial

11   statements, investment policy statements, fund, financial, economic, and other analyses, research

12   materials, service agreements, trust agreements, and the contract between Fujitsu and Shepherd

13   Kaplan. *See Declaration of Kai H. Richter in Support of Plaintiffs' Motion for Preliminary*

14   *Approval of Class Action Settlement ("First Richter Decl.") ECF No. 128-9, ¶ 13*. Defendants

15   also served written discovery requests on Plaintiffs, and Plaintiffs collected and produced more

16   than 2,500 pages of responsive documents. *Id*.

17   **III.   MEDIATION**

18       In their ADR Stipulation at the outset of the case, the Parties agreed to a mediation

19   deadline of February 28, 2017. *ECF No. 42*. That deadline was later extended to March 31,

20   2017,[3] to account for extended briefing in connection with Defendants' motions to dismiss. *ECF*

21   *No. 75*. After that briefing was completed, the Parties participated in a full-day mediation session

22   with Hunter Hughes (a well-respected mediator)[4] in Atlanta on March 20, 2017. *First Richter*

23   *Decl.*, *¶ 15*. However, the first mediation was unsuccessful. *Id*.

24       After the Court denied Defendants' motions to dismiss, the Parties agreed to participate in

25   a second mediation with Mr. Hughes. *Id. ¶ 16*. The second mediation took place on September

26   _____

[3] A typo in the underlying stipulation incorrectly referred to the year as 2016. *See ECF No. 75*.

27   [4] Mr. Hughes is an experienced mediator who has successfully resolved a number of ERISA class
    actions, as well as other types of cases. *First Richter Decl.*, *¶ 14*.

28

-3-

28, 2017. *Id*. Following a full day of arms'-length negotiations overseen by Mr. Hughes, the parties reached a settlement in principle. *Id*. The parties then negotiated a comprehensive Settlement Agreement, which was fully executed on December 6, 2017. *Id. ¶ 17*.

**IV.   SETTLEMENT TERMS**

**A.   Monetary Relief**

Under the Settlement, $14,000,000 was paid into a common settlement fund ("Qualified Settlement Fund") for the benefit of the Settlement Class.[5] *Settlement Agreement ¶ 5.4; Kopperud Decl., ¶ 15*. The Qualified Settlement Fund is held in an interest-bearing escrow account by an Escrow Agent appointed by the parties. *Id., ¶ 5.1; Kopperud Decl., ¶ 15*.

If the Settlement becomes Effective, the Qualified Settlement Fund will be distributed to Class Members, after deductions for any approved payments for attorneys' fees and costs, administrative expenses, and Class Representatives service awards. *Settlement Agreement, ¶¶ 2.31, 5.7*. Following such deductions, payments to Class Members will be made according to the Plan of Allocation in the Settlement Agreement. *Id., ¶¶ 6.1-6.12*.

Under the Plan of Allocation, each eligible Class Member will be assigned a "Settlement Allocation Score," which will be calculated by (1) determining the total balance of each participant's 401(k) account at the end of each quarter during the class period, and (2) crediting ten points for every dollar in the account for those quarters through the third quarter of 2016, and one point for every dollar in the account from the fourth quarter of 2016 through the end of the Class Period.[6] *Id., ¶ 6.4.1*. Each eligible Class Member's share of the Net Settlement Amount will

---

[5] The Settlement Class is defined as:

> All participants and beneficiaries of the Fujitsu Group Defined Contribution and 401(k) Plan at any time on or after June 30, 2010 through September 30, 2017, including any Beneficiary of a deceased person who was a Participant in the Plan at any time during the Class Period, and any Alternate Payees, in the case of a person subject to a Qualified Domestic Relations Order who was a Participant in the Plan at any time during the Class Period.

*ECF No. 132, ¶ 4*. Excluded from this class are Defendants, their directors, and any employees with fiduciary responsibility for the Plan's investment or administrative functions. *Id.*

[6] The point allocations change at the beginning of the fourth quarter of 2016 because that is when the Plan's new investment lineup was fully available following Fujitsu's removal of Shepherd

-4-

be proportional to his or her Settlement Allocation Score compared to the sum of all Class Members' Settlement Allocation Scores. *Id., ¶ 6.4.2.* In other words, Class Members will receive a share of the Net Settlement Amount proportionate to their weighted level of investment relative to all Class Members.

Current Plan participants will have their Plan accounts automatically credited with their share of the Settlement Fund. *Id., ¶ 6.5.* Former participants will be required to submit a claim form. This process allows them to elect to have their distribution rolled over into an individual retirement account or other eligible employer plan, or to receive a direct payment by check. *Id., ¶ 6.6.* This is consistent with other settlements, and will minimize the portion of the settlement fund paid as taxes and also minimize waste due to uncashed checks. *First Richter Decl. ¶ 7.5* Any amount remaining in the Qualified Settlement Fund following settlement distributions to Class Members will be paid back into the Plan. *Settlement Agreement ¶ 6.12.*

### B.    Prospective Relief

The Settlement also provides that Fujitsu shall issue a Request for Proposal ("RFP") for the Plan's recordkeeping services, and shall seek in the RFP to reduce the amount of recordkeeping expenses paid by the Plan, whether directly or indirectly through revenue sharing. *Id., ¶ 7.1.* Combined with the changes that Fujitsu already has made to the Plan's investment lineup, this will address the issues that Plaintiffs raised in their FAC. *ECF No. 128-9, ¶ 8.*

### C.    Release of Claims

In exchange for the relief provided by the Settlement, the Settlement Class will release Defendants and their parents and affiliates (the "Released Parties") from all claims:

> a.    That were asserted or could have been asserted in the Action under Subchapter I, Subtitle B, Part 4 of the Employee Retirement Security Act of 1974, as amended, or that did or could arise out of, relate to or have been connected with the conduct alleged in the Complaint or Amended Complaint;

---

Kaplan as the Plan's investment manager and the subsequent overhaul of the Plan's investment lineup. *First Richter Decl. ¶ 6 n.4.* The only claims alleged in the FAC that are applicable to the period of time after the new investment lineup took effect are the claims related to recordkeeping fees. *Id.* Comparing the estimated excess recordkeeping fees to the total estimated excess fees, the Settlement Agreement's allocation utilizing a 10:1 ratio is reasonable and fair. *Id.*

b.  That would be barred by *res judicata* based on entry by the Court of the Final Approval Order;

c.  That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Net Settlement Amount pursuant to the Plan of Allocation; or

d.  That relate to the approval by the Independent Fiduciary of the Settlement Agreement, unless brought against the Independent Fiduciary alone.

*Settlement Agreement ¶¶ 2.38, 9.1.*

## V.   PRELIMINARY APPROVAL OF THE SETTLEMENT

On December 22, 2017, the Court issued an Order (1) preliminarily approving the Settlement; (2) scheduling a Fairness Hearing for May 4, 2018; (3) appointing Analytics Consulting, LLC ("Analytics"), as the Settlement Administrator; (4) preliminarily certifying the Settlement Class; and (5) directing Settlement Notice to Class Members. *ECF No. 132.*

## VI.  CLASS NOTICE AND REACTION TO SETTLEMENT

Pursuant to the Court's Order preliminarily approving the Settlement, Analytics mailed the approved Settlement Notice (and Former Participant Claim Form, if applicable) to each of the Class Members identified by the Plan's recordkeepers. *Kopperud Decl., ¶ 9.* In total, 22,702 Settlement Notices were mailed, including 10,204 Notices to Current Participants and 12,498 Notices to Former Participants. *Id.*

Prior to sending these Notices, Analytics cross-referenced the addresses provided with the United States Postal Service National Change of Address ("NCOA") Database. *Kopperud Decl., ¶ 8.* In the event that any Settlement Notices were returned, Analytics re-mailed the Notice to any forwarding address that was provided, and performed a skip trace in an attempt to ascertain a valid address for the Class Member in the absence of a forwarding address. *Id. ¶¶ 11-12.* As a result, the notice program was very effective. Out of 22,702 Settlement Notices that were mailed, only 3.4% were ultimately undeliverable despite these efforts. *Id. ¶ 13.*

In the event that any Class Members desired further information, Analytics established a settlement website at www.fujitsu401ksettlement.com. *Kopperud Decl., ¶ 16.* Among other things, the Settlement Website included: (1) a "Frequently Asked Questions" page containing a

-6-

1    clear summary of essential case information; (2) a "Home" page and "Important Deadlines" page,

2    each containing clear notice of applicable deadlines; (3) case and settlement documents for

3    download (including the FAC, the Order denying Defendants' motions to dismiss, the Settlement

4    Agreement, Settlement Notices, Former Participant Claim Form, Plaintiffs' Motion for

5    Preliminary Approval of Class Action Settlement, the Preliminary Approval Order, and Plaintiffs'

6    Motion for Approval of Attorneys' Fees, Expenses, and Service Awards); and (4) email, phone,

7    and U.S. mail contact information for Analytics. *Id.* In addition, Analytics created and maintained

8    a toll-free telephone support line (1-866-997-1382) as a resource for Class Members seeking

9    information about the Settlement. *Kopperud Decl., ¶ 17.* This telephone number was referenced

10   in the Settlement Notices, and also appears on the Settlement Website. *Id.*

11          As of the date of Plaintiffs' submission of this motion, no objections have been received.

12   *Kopperud Decl., ¶ 18; Third Richter Decl., ¶ 4.*[7] The period for Class Members to timely object

13   to the Settlement expired on April 6, 2018. *See ECF No. 132, ¶¶ 2, 7.*

14   **VII.    REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY**

15          Pursuant to the Settlement and applicable ERISA regulations,[8] the Settlement was

16   submitted to an independent fiduciary, Nicholas L. Saakvitne, for review. *Third Richter Decl., ¶ 3*

17   *& Ex. 1.* Mr. Saakvitne has been an ERISA attorney for more than 35 years and has acted as an

18   independent ERISA fiduciary for employee benefit plans since 1997. *Third Richter Decl., Ex. 1*

19   *(Statement of Credentials).* During that time, he has served as a fiduciary for thousands of plans

20   and has overseen over $1 billion of plan benefit payments and direct rollovers. *Id.* He also has

21   been appointed as a plan fiduciary by state and federal courts, and has acted as an independent

22   fiduciary for purposes of evaluating proposed ERISA class action settlements. *Id.* After reviewing

23   the Settlement and other case documents, and interviewing counsel for each of the Parties, Mr.

24   Saakvitne found that the Settlement terms are reasonable. *Id. at 9.* Mr. Saakvitne also found that

25   the amounts allowed for attorneys' fees, expenses, and service awards are reasonable. *Id. at 10.*

26   _____

     [7] There also are no opt-outs, as the Settlement Class was certified under Rule 23(b)(1).

27   [8] *See* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg.

28   33830 ("PTE 2003-39").

-7-

1    Accordingly, the Independent Fiduciary "approve[d] the Settlement and the Plan of Allocation …

2    and authorize[d] the Plan to participate in the Settlement in accordance with [PTE] 2003-39." *Id.*

3    *at 12.*

4                                            **LEGAL STANDARD**

5          Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any

6    settlement agreement that will bind absent class members. *In re Charles Schwab Corp. Secs.*

7    *Litig.*, 2011 WL 1481424, at *4 (N.D. Cal. Apr. 19, 2011). This involves a "two-step process."

8    Manual for Complex Litigation § 30.41, at 236 (3d ed. 1995). First, counsel submit the proposed

9    terms of the settlement to the court, and the court makes a preliminary fairness evaluation. *Id.*

10   Second, following preliminary approval of the settlement, class members are provided notice of a

11   formal fairness hearing, at which time arguments and evidence may be presented in support of, or

12   in opposition to, the settlement. *Id.*

13         The determination of whether a proposed settlement is fair falls within the sound

14   discretion of the district court. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

15   1992). However, the Ninth Circuit recognizes a "strong judicial policy that favors settlements,

16   particularly where complex class action litigation is concerned." *Id.*; *see also Churchill Vill.,*

17   *L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004). To evaluate the fairness of the proposed

18   settlement, courts in the Ninth Circuit look to the eight *Churchill* factors, including:

19             (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely
               duration of further litigation; (3) the risk of maintaining class action status
20             throughout the trial; (4) the amount offered in settlement; (5) the extent of
               discovery completed and the stage of the proceedings; (6) the experience and view
21             of counsel; (7) the presence of a governmental participant; and (8) the reaction of
               the class members of the proposed settlement.
22
     *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill*
23
     *Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir.2004)). However, the "relative degree of
24
     importance to be attached to any particular factor will depend upon and be dictated by the nature
25
     of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances
26
     presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625
27
     (9th Cir. 1982). Accordingly, "[n]ot all of these factors will apply to every class action settlement.
28
                                                    -8-

1    Under certain circumstances, one factor alone may prove determinative in finding sufficient

2    grounds for court approval." *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th

3    Cir.1993).

4                                              **ARGUMENT**

5    **I.    THE SETTLEMENT SHOULD BE APPROVED**

6         As the Court found in its Preliminary Approval Order, the Settlement is the product of

7    "arm's-length negotiations by experienced and competent counsel overseen by a neutral

8    mediator." *ECF No. 132 at 2.* In addition, all of the relevant *Churchill* factors support final

9    approval of the Settlement.[9]

10        **A.    The Settlement Provides Substantial Relief to the Settlement Class**

11        The report of the Independent Fiduciary correctly notes that the monetary terms of the

12   Settlement provide "a very meaningful recovery in the aggregate to participants and

13   beneficiaries." *Third Richter Decl., Ex. 1 at 9.* Indeed, as Plaintiffs outlined in their motion for

14   preliminary approval, the $14 million recovery is significant, not only in the aggregate, but also

15   when measured on a per capita basis (about $616 per Class Member) and as a percentage of Plan

16   assets (a full 1% of Plan assets). *See ECF No. 128 at 12; ECF No. 128-9, ¶ 4.* These amounts

17   compare very favorably to approved settlements in other, similar cases, which have been as low

18   as approximately $55 per participant and less than 0.1% of total plan assets. *ECF No. 128-9, ¶ 4.*

19        Moreover, the $14 million recovery represents nearly 40% of Plaintiffs' core damages

20   claim for excessive fees ($36.1 million), and just under 10% of the Plaintiffs' most aggressive

21   "all in" measure of damages ($147.8 million, inclusive of excessive fees, lost investment income,

22   and compounding). *See ECF No. 128-9, ¶ 5.* Under either measure, the amount of the Settlement

23

24   ─────────────────────────

     [9] There is no governmental participant present in this litigation; accordingly, this factor is not

25   relevant. *See In re Animation Workers Antitrust Litig.*, 2016 WL 6841655, *2 (N.D. Cal. Nov. 11,
     2016) ("The fifth factor, the presence of a governmental participant, is irrelevant because there is

26   no governmental participant in this action."). Indeed, to the extent that this factor has any
     relevance, it supports approval of the Settlement because none of the government actors served

27   with notice of the Settlement under the Class Action Fairness Act ("CAFA") have raised any
     issue with respect to the Settlement. *Third Richter Decl., ¶ 5; see also ECF No. 129, 133* (notices
     of service of CAFA notices).

28

1   meets or exceeds the percentage of damages commonly approved by courts in the Ninth Circuit.[10]

2   *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving

3   settlement of $13.75 million, or just over 9% of maximum potential recovery of $151.8 million);

4   *accord, In re Toys R Us–Del., Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295

5   F.R.D. 438, 453-54 (C.D. Cal. 2014) (granting final approval of a settlement recovering about 3%

6   of maximum damages); *Reed v.1-800 Contacts, Inc.*, 2014 WL 29011, at *6 (S.D. Cal. Jan. 2,

7   2014) (granting final approval of a settlement recovering about 2% of maximum damages); *In re

8   LDK Solar Sec. Litig.*, 2010 WL 3001384, at *2 (N.D. Cal. July 29, 2010) (granting final

9   approval of a settlement recovering about 5% of damages).[11]

10         Further, the Settlement provides meaningful prospective relief for members of the

11   Settlement Class. As described above, following approval of the Settlement, Fujitsu shall issue a

12   Request for Proposal ("RFP") for the Plan's recordkeeping services, and shall seek in the RFP to

13   reduce the amount of recordkeeping expenses paid by the Plan, whether directly or indirectly

14   through revenue sharing. *Settlement Agreement ¶ 7.1.* This will resolve the only remaining issue

15   with the Plan identified in the FAC. "The Settlement therefore offers a substantial benefit to the

16   Class in terms of both significant settlement payments and meaningful prospective relief." *Lee v.

17   JPMorgan Chase & Co.*, 2015 WL 12711659, at *5 (C.D. Cal. Apr. 28, 2015).  This further

18   weighs in favor of approval.  *See Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1121

19   (C.D. Cal. 2008) ("Nor can the results in this case be judged solely by the monetary component of

20   the settlement. Due to the litigation, the County has stopped all of the strip search practices

21   addressed in this settlement…. That is a major accomplishment, independently of the monetary

---

[10] "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

[11] *See also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (recovery of 9 percent was reasonable); *In re Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly 6 to 12 percent of a potential recovery ... seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

1   settlement."); *accord, Curtis-Bauer v. Morgan Stanley & Co., Inc.* 2008 WL 4667090, at *5

2   (N.D. Cal. Oct. 22, 2008).

3       In evaluating the relief provided under a proposed settlement, "[t]he court's role is not to

4   advocate for any particular relief, but instead to determine whether the settlement terms fall

5   within a reasonable range of possible settlements, giving 'proper deference to the private

6   consensual decision of the parties' to reach an agreement rather than to continue litigating." *In re*

7   *Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1133 (N.D. Cal. 2015) (quoting

8   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)). Considering the significant

9   monetary payment, the prospective relief that was negotiated relating to recordkeeping services,

10  and the changes that already have been made to the Plan's investment menu, there is no doubt

11  that the relief provided here strongly supports approval.

12      **B.      The Settlement Properly Reflects Both the Strength of the Claims and the**

13      **Risks of Further Litigation**

14      The significant recovery provided by the Settlement properly balances the strength of the

15  Plaintiffs' claims with the risks, expenses, and delays inherent in further litigation. As noted

16  above, the parties were unable to reach a settlement prior to the Court's ruling on the motions to

17  dismiss. *See supra* at 3.  It was only after the Court issued its order that the parties resolved the

18  case. *Id.* at 4.  This objectively demonstrates that the Settlement was calibrated to reflect the

19  strength of Plaintiffs' claims after those claims were initially tested on the merits, and factored in

20  the Court's ruling on the motions to dismiss.

21      While Plaintiffs passed this initial test, it was uncertain whether they ultimately would

22  have prevailed. In its Rule 12 Order, the Court expressly "limit[ed] its review to whether the facts

23  alleged in the complaint, when taken as true, survive[d] the plausibility standard on a motion to

24  dismiss." *ECF No. 107 at 1.* As to Defendants' arguments, the Court noted that they "challenge

25  the facts of plaintiffs' complaint, thus they are better suited for summary judgment." *Id.*

26      Were this case to proceed to trial, Defendants would no doubt argue, as they did in their

27  motions to dismiss, that Plaintiffs' arguments relating to investment performance suffer from

28

-11-

1  hindsight bias. *See ECF No. 71-1, at 20-21; ECF No. 72, at 14-16*. Although Plaintiffs believe

2  they could overcome any such criticism on the particular facts of this case, they do recognize the

3  risks posed by this argument. *See Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1099

4  (9th Cir. 2004) (rejecting Plaintiffs' arguments that fiduciaries acted imprudently, noting they

5  were made "with 20–20 hindsight"). Defendants also would have reasserted their argument that

6  the allegedly excessive Plan expenses were within a reasonable range. *See ECF No. 72, at 9*

7  (*citing Tibble*, 729 F.3d at 1135). In addition, Defendants would have introduced the materials

8  that this Court declined to consider in connection with the motions to dismiss. Even if Plaintiffs

9  had prevailed on all of these issues, Defendants likely would have appealed any adverse judgment

10  to the Ninth Circuit.

11         Moreover, regardless of the outcome as to liability, the Court could have awarded a wide

12  range of damages. *See In re NVIDIA Corp. Deriv. Litig.*, 2008 WL 5382544, at *3 (N.D. Cal.

13  Dec. 22, 2008) ("[E]ven a favorable judgment at trial may face post-trial motions and even if

14  liability was established, the amount of recoverable damages is uncertain."). Damage calculations

15  relating to 401(k) investment offerings are the subject of significant uncertainty. *See Tussey v.*

16  *ABB, Inc.*, 746 F.3d 327, 338 (8th Cir. 2014) (instructing district court to "reevaluate its method

17  of calculating the damage award, if any, for the participants' investment selection … claims");

18  *Tussey v. ABB, Inc.*, 850 F.3d 951, 958-61 (8th Cir. 2017), *cert. denied,* No. 17-265, 2017 WL

19  3594208 (U.S. Oct. 2, 2017) (remanding a second time, finding that the district court still did not

20  adequately consider "other ways of measuring the plans' losses").  Indeed, the Restatement of

21  Trusts expressly states that the "determination of the recovery from a trustee for imprudent or

22  otherwise improper investments" is "difficult." *See* Restatement (Third) of Trusts, § 100 cmt. b(1)

23  (2012). This further supports approval of the settlement in this case. *See Wren v. RGIS Inventory*

24  *Specialists*, 2011 WL 1230826, at *7 (N.D. Cal. Apr. 1, 2011) (noting the expense, delay, and

25  risks associated with expert challenges and damage calculations supported settlement approval).

26         Finally, it is widely recognized that claims under ERISA relating to 401(k) fees are

27  "particularly complex." *See Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *2 (S.D. Ill.

28

1   July 17, 2015). As a result, ERISA 401(k) cases "often lead[] to lengthy litigation." *Krueger v.*

2   *Ameriprise Financial, Inc.*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015).[12] Thus, the

3   "general risk inherent in litigating complex claims … to their conclusion," *see In Re Worldcom,*

4   *Inc. ERISA Litig.,* 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004), is acutely present in ERISA

5   401(k) cases and favors settlement.

6          In sum, the risk, expense, and substantial delays that would result from further litigation

7   all support approval of the Settlement, particularly in light of the significant and immediate

8   recovery that the Settlement will provide to the Plan and its participants. *See In re Portal*

9   *Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) ("risks of

10  proceeding to summary judgment, trial and appeal also support the settlement"); *Kruger v.*

11  *Novant Health, Inc.*, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) ("early settlement of a

12  401(k) excessive fee case benefits the employees and retirees in multiple ways").

13        **C.      The Extent of Discovery Completed and the Stage of the Proceedings**

14         In negotiating the Settlement, the parties' positions on the merits of the case were well-

15  informed. The extensive motion-to-dismiss briefing highlighted and crystallized the factual and

16  legal issues present in this case. *See ECF No. 71-1; ECF No. 72; ECF No. 77; ECF No. 78; ECF*

17  *No. 84; ECF No. 86*. And while "formal discovery is not a necessary ticket to the bargaining table

18  where the parties have sufficient information to make an informed decision," *Linney v. Cellular*

19  *Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quotation omitted), here the parties

20  exchanged thorough written discovery, including the production of thousands of pages of

21  documents. *First Richter Decl. ¶ 13*. Among other things, these documents included meeting

22  minutes, Plan disclosures, financial statements, economic analyses, research materials, service

23  agreements, and other important documents. *Id.* Accordingly, the parties were able to negotiate

24

---

[12] It is not unusual for ERISA fee cases to extend for a decade or longer before final resolution.
25  *See Tussey v. ABB Inc.,* 2017 WL 6343803, at *3 (W.D. Mo. Dec. 12, 2017) (requesting proposed
   findings more than ten years after suit was filed on December 29, 2006); *Tibble v. Edison Int'l*,
26  2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after
   suit was filed on August 16, 2007); *Abbott*, 2015 WL 4398475, at *3  (noting that the case had
27  originally been filed on "September 11, 2006").

28                                          -13-

with "a full understanding of the legal and factual issues surrounding the case," *DIRECTV*, 221 F.R.D. at 527 (quoting 5 Moore's Federal Practice, § 23.85[2][e] (Matthew Bender 3d ed.)), and the "discovery process was sufficient to allow the parties to make an informed settlement decision." *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 847 (N.D. Cal. 2017). Under these circumstances, when a settlement follows "sufficient discovery and genuine arms-length negotiation," it is "presumed fair." *DIRECTV*, 221 F.R.D. at 528 (citations omitted).

### D.    The Experience and Views of Counsel and the Reaction of Class Members to the Proposed Settlement

The final two factors, the experience and views of Class Counsel and the reaction of the Class Members, also support approval of the Settlement. As the Court noted in its preliminary approval order, Class Counsel is "experienced and qualified … to represent the Class" in this matter. *ECF No. 132 at 3*.[13] Class Counsel have affirmed their view that the Settlement is "fair, reasonable, and adequate" in light of "the risks associated with the litigation." *First Richter Decl., ¶ 5; Third Richter Decl., ¶¶ 2, 6*. This weighs in favor of approval of the Settlement.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) (finding that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation"); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (finding this factor favored settlement approval where "[e]xperienced counsel on both sides, each with a comprehensive understanding of the strengths and weaknesses of each party's respective claims and defenses, negotiated this settlement over an extended period of time"); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("The fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

With regard to the reaction of the Settlement Class Members, each of the Class Representatives have submitted declarations affirming their support of the Settlement. *See ECF*

---

[13] Class Counsel have a proven track record of success in class action cases (including several cases in this district), and ERISA cases in particular. *See First Richter Decl., ¶¶ 22-24.*

-14-

*No. 128-1 – ECF No. 128-8.* Moreover, "the absence of any objections" from absent Class Members "demonstrates the overall reasonableness of this settlement" and further favors approval. *In re Quintus Sec. Litig.*, 2006 WL 3507936, at *3 (N.D. Cal. Dec. 5, 2006); *see also In re Omnivision Techs.*, 559 F. Supp. 2d at 1043 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the settlement are favorable to the class members."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010) ("The lack of any objections from Class members is an extremely strong indication that the Settlement is fair.").  Indeed, "unanimous approval of the proposed settlement[] by the class members is entitled to nearly dispositive weight in this court's evaluation of the proposed settlement." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1343.  Accordingly, the final two *Churchill* factors strongly support approval of the Settlement.

## II. THE CLASS NOTICE WAS REASONABLE

Finally, the class notice program in this case also was reasonable and satisfied the requirements of Due Process and Rule 23. The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice that was provided here.

As noted above, the Settlement Administrator mailed the Court-approved Settlement Notices to Class Members via U.S. Mail to their last known address. This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). The record reflects that 96.6% of these Settlement Notices were successfully delivered. *Kopperud Decl. ¶ 13*. This confirms the effectiveness of the notice program in this case. Further, the notice program was supplemented by the online Settlement Website.

The content of the Notices also was reasonable. Both Settlement Notices included, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of claims; (5) instructions for submitting a claim (in the event one was required); (6) instructions as to how to object to the Settlement and a date by which Settlement Class members must object; (7) the date,

time, and location of the final approval hearing; (8) contact information for the Settlement Administrator; and (9) information regarding Class Counsel and the amount that Class Counsel may seek in attorneys' fees and expenses. *See Kopperud Decl., Exs. 1 and 2*. This was more than sufficient to satisfy Rule 23 and Due Process. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 946 (notice is sufficient when it provides information necessary "to alert those with adverse viewpoints to investigate and to come forward and be heard.") (quotation omitted).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order granting final approval of the Settlement in the form submitted herewith.

Respectfully Submitted,

Dated: April 20, 2018                    NICHOLS KASTER, PLLP

                                         By: */s/ Kai H. Richter*
                                         Kai H. Richter
                                         *Attorney for Plaintiffs and the Settlement Class*