UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY JOHNSON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FUJITSU TECHNOLOGY AND BUSINESS OF AMERICA, INC., et al.,<br><br>Defendants. | Case No. 16-cv-03698-NC<br><br>**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**<br><br>Re: ECF 138, 142 |

Following the Court's preliminary approval, notice to prospective class members, and a fairness hearing, the Court now considers Plaintiffs' unopposed motion for final approval of a proposed class action settlement concerning a retirement fund for employees of Fujitsu Technology and Business of America, Inc. The proposed class settlement totals $14 million, and includes measures to prevent future mismanagement of the retirement fund. Also before the Court is Plaintiffs' unopposed motion for attorneys' fees, litigation and administrative costs, and class representative awards, totaling $3,679,380.76. This amount would be deducted from the $14 million settlement fund.

Weighing the strength of the claims against the risk of continued litigation, the Court finds that the proposed settlement is fair and reasonable. Accordingly, the Court GRANTS the motion for final approval the settlement agreement. The Court also GRANTS the motion for attorneys' fees and awards the requested amounts in full.

## I. Background

### A. Pre-Settlement Procedural History

This litigation arises from alleged mismanagement of an employee 401(k) plan, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. The plan underlying this action is the Fujitsu Group Defined Contribution and 401(k) Plan, and the claims were brought against defendants Fujitsu Technology and Business of America, Inc., itself and as successor in interest to Fujitsu Management Services of America, Inc. ("Fujitsu"), the Fujitsu Group Defined Contribution and 401(k) Plan Administrative Committee, the Fujitsu Group Defined Contribution and 401(k) Plan Investment Committee, Pete Apor, Belinda Bellamy, Sunita Bicchieri, and John Does 1-30 (collectively with Fujitsu, the "Fujitsu Defendants"), and Shepherd Kaplan LLC ("Shepherd Kaplan") (collectively with the Fujitsu Defendants, the "Defendants").

Plaintiffs Jerry Johnson, Jesse Perry, Yolanda Weir, Karen White, Todd Salisbury, Peter Hitt, Patricia Collier, and Verlin Laine filed their original class action complaint on June 30, 2016, on behalf of themselves, the Plan, and participants and beneficiaries of the Plan. *See generally* Compl. (ECF 1). The central allegation of the complaint was that Defendants failed to control Plan costs, in violation of ERISA. *Id.* ¶¶ 9, 80–82. Plaintiffs alleged that the Plan's high costs were the result of imprudent actions and omissions, including: (1) utilizing higher-cost share classes of funds rather than the least expensive available share classes; (2) failing to monitor and control the Plan's recordkeeping and administrative fees; (3) selecting and retaining excessively costly investments for the Plan lineup; and (4) imprudently selecting and retaining underperforming investments in the Plan. *Id.* ¶¶ 84–135.

Based on these allegations, Plaintiffs asserted a claim for breach of fiduciary duty under ERISA against all Defendants, and a claim for failure to monitor fiduciaries against Fujitsu and the Plan's administrative committee. *Id.* ¶¶ 145–62. Plaintiffs filed an amended complaint on November 7, 2016, adding additional factual details but leaving unchanged the parties and causes of action. *See generally* Am. Compl. (ECF 68).

Defendants moved in two separate motions to dismiss the amended complaint, both of which the Court denied. *See* Order Denying Mots. to Dismiss (ECF 107).

During the pendency of the motions to dismiss and following the Court's order denying those motions, the parties engaged in written discovery. In total, Defendants produced more than 12,000 of pages of documents, and Plaintiffs produced more than 2,500 pages of responsive documents. Richter Decl. (ECF 128-9) ¶ 13. The parties also participated in two mediation sessions, the latter of which resulted in a comprehensive settlement agreement that was fully executed on December 6, 2017. *Id.* ¶ 17.

### B. The Settlement Agreement

The settlement agreement is docketed in full at ECF 128-10. The Court summarizes its contents here.

First, the proposed settlement class is defined as:

> all participants and beneficiaries of the Fujitsu Group Defined Contribution and 401(k) Plan at any time on or after June 30, 2010 through September 30, 2017, including any Beneficiary of a deceased person who was a Participant in the Plan at any time during the Class Period, and any Alternate Payees, in the case of a person subject to a Qualified Domestic Relations Order who was a Participant in the Plan at any time during the Class Period. Excluded from this class are Defendants, their directors, and any employees with fiduciary responsibility for the Plan's investment or administrative functions.[1]

Settl. Agr. ¶ 2.42. Under the settlement terms, $14,000,000 was paid into a common settlement fund for the benefit of a proposed settlement class. Settl. Agr. ¶ 5.4. The settlement fund is held in an interest-bearing escrow account by an escrow agent. Settl. Agr. ¶ 5.1; *see* Kopperud Decl. (ECF 142-3) ¶ 15 (declaring that the common fund has been established and funded, and is being maintained by the designated escrow agent). Upon Court approval, deductions will be made from the gross $14 million common fund to pay for approved attorneys' fees and costs, administrative expenses, and class representative service awards. Settl. Agr. ¶¶ 2.31, 5.7.

---

[1] Capitalized terms are defined in the settlement agreement.

The post-deduction net settlement amount will be paid to class members according to the settlement agreement's "Plan of Allocation." *Id.* ¶¶ 6.1–6.12. Under the Plan of Allocation, each eligible class member will be assigned a "Settlement Allocation Score," which will be calculated by (1) determining the total balance of each participant's 401(k) account at the end of each quarter during the class period; and (2) crediting ten points for every dollar in the account for those quarters through the third quarter of 2016, and one point for every dollar in the account from the fourth quarter of 2016 through the end of the Class Period. *Id.* ¶ 6.4.1. Each eligible class member's share of the net settlement amount will be proportional to his or her Settlement Allocation Score compared to the sum of all class members' Settlement Allocation Scores. *Id.* ¶ 6.4.2.

Current Plan participants will have their accounts automatically credited with their share of the settlement fund. *Id.* ¶ 6.5. Former participants are required to submit a claim form. This process allows them to elect to have their distribution rolled over into an individual retirement account or other eligible employer plan, or to receive a direct payment by check. *Id.* ¶ 6.6. Any amount remaining in the common fund following settlement distributions to class members will be paid back into the Plan. *Id.* ¶ 6.12.

The settlement agreement also provides that Fujitsu must issue a Request for Proposal ("RFP") for the Plan's recordkeeping services, and must seek in the RFP to reduce the amount of recordkeeping expenses paid by the Plan, whether directly or indirectly through revenue sharing. *Id.* ¶ 7.1.

In exchange for the relief provided by the settlement, the settlement class will release Defendants and certain associated parties from claims that:

- were asserted or could have been asserted in this action under ERISA Subchapter I, Subtitle B, Part 4, or are connected with the conduct alleged in the complaint or amended complaint;
- would be barred by res judicata if the Court enters a final approval order;
- relate to the calculation or manner of allocation of the net settlement amount pursuant to the Plan of Allocation; or

Case No. 16-cv-03698-NC      4

- relate to the approval by the independent fiduciary of the settlement agreement, unless brought against the independent fiduciary alone.[2]

Settl. Agr. ¶¶ 2.38, 9.1.

### C. Preliminary Approval

On December 22, 2017, the Court issued an order (1) preliminarily certifying the proposed certification class; (2) preliminarily approving the settlement agreement; (3) scheduling a fairness hearing for May 4, 2018; (4) appointing Analytics Consulting, LLC, as the settlement administrator; and (5) directing settlement notice to class members. *See* Prelim. Approval Order (ECF 132).

### D. Class Notice and Reaction to Settlement

Pursuant to the Court's order preliminarily approving the settlement agreement, Analytics mailed the approved settlement notice (and claim form, to former participants) to each of the class members identified by the Plan's recordkeepers. Kopperud Decl. (ECF 142-3) ¶ 9. In total, 22,702 notices were mailed, including 10,204 notices to current participants and 12,498 notices to former participants. *Id.* Prior to sending these notices, Analytics cross-referenced the addresses provided with the United States Postal Service National Change of Address Database. *Id.* ¶ 8. In the event that any notices were returned, Analytics re-mailed the notice to any forwarding address that was provided, and performed a skip trace in an attempt to ascertain a valid address for the class member in the absence of a forwarding address. *Id.* ¶¶ 11-12. As a result, only 3.4% of the 22,702 notices were ultimately undeliverable despite these efforts. *Id.* ¶ 13.

In the event that any class members desired further information, Analytics established a settlement website at www.fujitsu401ksettlement.com. *Id.* ¶ 16. Among other things, the settlement website included: (1) a "Frequently Asked Questions" page containing a clear summary of essential case information; (2) a "Home" page and "Important Deadlines" page, each containing clear notice of applicable deadlines; (3) case

---

[2] The descriptions here merely paraphrase the releases. The exact wording is contained in the settlement agreement document.

Case No. 16-cv-03698-NC 5

and settlement documents for download; and (4) email, phone, and U.S. mail contact information for Analytics. *Id.* In addition, Analytics created and maintained a toll-free telephone support line (1-866-997-1382) as a resource for class members seeking information about the Settlement. *Id.* ¶ 17. This telephone number was referenced in the settlement notices, and also appears on the settlement website. *Id.*

The period for class members to timely object to the settlement expired on April 6, 2018. *See* Prelim. Approval Order (ECF No. 132) ¶¶ 2, 7. As of the May 4, 2018, final approval hearing—almost 30 days after the deadline—no objections from class members were received. Kopperud Decl. (ECF 142-3) ¶ 18; Richter Decl. (ECF 142-1) ¶ 4; Fairness Hr'g (May 4, 2018) (ECF 144).

### E. CAFA Notices

Pursuant to the Class Action Fairness Act, 29 U.S.C. § 1711, et seq., a separate notice of the settlement was provided to the Attorneys General for each of the states in which a class member resides, the Attorney General of the United States, and the United States Secretary of Labor. *See* ECF 129, 133.

### F. Review and Approval by Independent Fiduciary

Pursuant to the settlement agreement and applicable ERISA regulations,[3] the settlement terms were submitted to an independent fiduciary, Nicholas L. Saakvitne, for review. Richter Decl. (ECF 142-1) ¶ 3 & Ex. 1. Mr. Saakvitne has been an ERISA attorney for more than 35 years and has acted as an independent ERISA fiduciary for employee benefit plans since 1997. *Id.* Ex. 1. After reviewing the settlement agreement and other case documents, and interviewing counsel for each of the parties, Mr. Saakvitne found that the settlement terms are reasonable. *Id.* Mr. Saakvitne also found that the amounts allowed for attorneys' fees, expenses, and service awards are reasonable. *Id.*

### G. Fairness Hearing

The Court held a fairness hearing on May 4, 2018. *See* ECF 143, 144. There, the

---

[3] *See* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830.

Case No. 16-cv-03698-NC  6

1 parties confirmed that the process of notifying class members went smoothly, that the
2 settlement funds were being managed as contemplated in the settlement agreement, and
3 that no objections to the settlement had been received from class members. Neither party
4 raised objections or concerns with the settlement agreement moving forward. No class
5 members or non-parties appeared at the hearing.

Responding to the Court's earlier concern about the term "affiliates" as it appeared in the settlement agreement's releases, the parties agreed to submit clarifying definitions of the terms "affiliates" and "successors" as they appear in the releases. Those stipulated definitions were filed on May 10, 2018. *See* ECF 147. Counsel for all parties agreed at the fairness hearing that these definitions serve to add clarity to the settlement agreement, and not to modify it. The Court adopts and incorporates these clarifying definitions into the settlement agreement it considers.

### H. Motion for Final Approval

Plaintiffs now move for final approval of the settlement. ECF 142. In conjunction with the final approval motion, and as authorized by the settlement terms, Plaintiffs also move to recover attorneys' fees, costs, and expenses. ECF 138. Both motions are unopposed.

## II. Discussion

As a threshold matter, this Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). All parties have consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c). *See* ECF 12, 32, 34.

The Court first discusses Plaintiffs' motion for final approval of the class action settlement, and then discusses Plaintiffs' motion for attorneys' fees and other expenses.

### A. The Court Finally Approves the Class Action Settlement.

The settlement agreement contemplates a settlement class, which the Court preliminarily certified under Federal Rule of Civil Procedure 23(b)(1). *See* Prelim. Approval Order (ECF 132) at 4. The Court now confirms its findings and finally certifies the following non-opt-out class:

All participants and beneficiaries of the Fujitsu Group Defined Contribution and 401(k) Plan at any time on or after June 30, 2010 through September 30, 2017, including any Beneficiary of a deceased person who was a Participant in the Plan at any time during the Class Period, and any Alternate Payees, in the case of a person subject to a Qualified Domestic Relations Order who was a Participant in the Plan at any time during the Class Period. Excluded from this class are Defendants, their directors, and any employees with fiduciary responsibility for the Plan's investment or administrative functions.[4]

Any settlement agreement that will bind absent class members requires judicial approval. Fed. R. Civ. P. 23(e). In deciding whether approval is appropriate, "the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable" *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). To make this evaluation, courts in the Ninth Circuit look to the eight *Churchill* factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015). However, the "relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. The determination of whether a proposed settlement is fair falls within the sound discretion of the district court. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Here, considering the *Churchill* factors, the Court is persuaded that the settlement

---

[4] Capitalized terms have the same meaning here as they do in the settlement agreement.

Case No. 16-cv-03698-NC        8

agreement merits approval. Experienced class counsel negotiated a substantial settlement that balances the strength of Plaintiffs' claims against the risk and complexity inherent in ERISA litigation, and no class members have objected. After the Court denied Defendants' motions to dismiss, a wide range of outcomes was possible, including uncertain damages awards even if Plaintiffs did ultimately prevail on their claims. But Plaintiffs avoided that risk by negotiating a $14 million recovery that "represents nearly 40% of Plaintiffs' core damages claim for excessive fees ($36.1 million), and just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages ($147.8 million, inclusive of excessive fees, lost investment income, and compounding)." Mot. for Final Approval (ECF 142) at 9 (citing Richter Decl. (ECF 128-9) ¶ 5). This settlement figure amounts to over $600 per class member. Richter Decl. (ECF 128-9) ¶ 4. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement of $13.75 million, or just over 9% of maximum potential recovery of $151.8 million). Furthermore, the total settlement figure represents 1.04% of the Plan's year-end assets as of 2016, which compares favorably to other recent 401(k) settlements. *See* Richter Decl. (ECF 128-9) ¶ 4 (compiling recent 401(k) settlements that range from 0.08% to 3.30% of plan assets).

Considering the complexity inherent in ERISA litigation, *see Abbott v. Lockheed Martin Corp.*, No. 06-cv-701-MJR-DGW, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015), Plaintiffs' recovery is a reasonable resolution of their claims. This conclusion is supported by the fact that no class members filed objections in response to the settlement notices. Fairness Hr'g (May 4, 2018) (ECF 144); *see In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010) ("The lack of any objections from Class members is an extremely strong indication that the Settlement is fair.").

In sum, the Court finds that, viewed as a whole, the settlement is sufficiently "fair, adequate, and reasonable" to warrant approval. *Officers for Justice*, 688 F.2d at 625. The Court therefore approves the settlement agreement.

**B.     The Motion for Attorneys' Fees and Other Expenses Is Granted in Full.**

In conjunction with seeking final approval of the class action settlement, and as

Case No. 16-cv-03698-NC               9

1  contemplated by the settlement agreement, Plaintiffs move for attorneys' fees, certain costs
2  and expenses, and class representative service awards, all to be paid from the negotiated
3  gross settlement amount of $14 million. Mot. for Atty. Fees (ECF 138). Specifically,
4  Plaintiffs seek $3,500,000.00 in attorneys' fees; $43,410.76 in litigation costs and
5  expenses; $75,970.00 in settlement administration expenses; and $60,000.00 in service
6  awards ($7,500.00 to each of the eight class representatives). *See id.* The Court finds that
7  each of these figures is reasonable and awards the amounts in full.

### 1. Attorneys' Fees

First, the Court finds that $3.5 million, or 25% of the gross settlement amount, is a reasonable fee award given the facts of this case. In common fund cases like this one, the Ninth Circuit has endorsed calculating attorneys' fees using a benchmark of 25% of the common fund amount. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). Whether awarding the benchmark amount or some other figure, the Court must support an attorneys' fees award with "findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). In particular, district courts should consider: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Hopkins v. Stryker Sales Corp.*, No. 11-cv-02786-LHK, 2013 WL 496358, at *1 (N.D. Cal. Feb. 6, 2013) (citing *Vizcaino*, 290 F.3d at 1048–50). Additionally, district courts may cross-check the reasonableness of a percentage award by comparing it to a lodestar calculation and risk multiplier. *Vizcaino*, 290 F.3d at 1050.

Here, as noted above, class counsel achieved a strong result through skillful litigation and settlement negotiation. After filing a detailed complaint and amended complaint, working through a substantial discovery process, litigating a motion to dismiss, and undergoing mediation and settlement discussions, class counsel obtained a settlement of $14 million and a mandatory request for proposal that will help ensure quality

Case No. 16-cv-03698-NC          10

management of class members' 401(k) funds down the road. This favorable result avoided risky litigation, where numerous factual and legal issues remained unresolved after the Court denied Defendants' motions to dismiss—for example, what the full extent of Defendants' alleged mismanagement of the Plan was, and whether it rose to the level of imprudence under ERISA. *See* Order on Mots. to Dismiss (ECF 107) at 6–8. And again, the Court notes that no class members filed objections in response to the settlement notices, suggesting a favorable outcome.

Regarding quality of representation, the litigation and settlement appear by all measures to be the work of skillful and experienced attorneys with significant expertise in the ERISA context. Taking into account the contingency basis on which Plaintiffs' counsel took the case, *see* Richter Decl. (ECF 138-1) ¶ 24, an award of 25% of the gross settlement amount is reasonable and comparable to (or lower than) similar cases. *See*, *e.g.*, *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 861 (N.D. Cal. 2017) (awarding 25% of the common fund); *see also Kruger v. Novant Health, Inc.*, No. 14-cv-208, 2016 WL 6769066, at *2 (M.D.N.C. Sept. 29, 2016); *Spano v. Boeing Co.*, No. 06-cv-743-NJR-DGW, 2016 WL 3791123, at *2 (S.D. Ill. Mar. 31, 2016); *Abbott*, 2015 WL 4398475, at *2; *Main v. American Airlines, Inc.*, Case No. 4:16-cv-00473, ECF No. 138 (N.D. Tex. Feb. 21, 2018) (all awarding 1/3 of the settlement figure in attorneys' fees).

A lodestar cross-check confirms the fee award's reasonableness. Billing at reasonable rates ranging from $600 to $875 per hour for attorneys with more than 10 years of experience, $325 to $575 per hour for attorneys with 10 years or less experience, and $250 per hour for paralegals and clerks, Plaintiffs' counsel accrued $798,120.00 in fees. Richter Decl. (ECF 138-1) ¶ 21. This amount requires a risk multiplier of 4.375 to reach the $3.5 million Plaintiffs seek. Though on the high end, this multiplier falls within the range of reasonableness, taking into account the fact that class counsel has expended additional time on the settlement approval motion since the last accounting of its billable hours, Fairness Hr'g (May 4, 2018), and given the relatively early settlement. *See*

Case No. 16-cv-03698-NC   11

*Vizcaino*, 290 F.3d at 1052 appx. (collecting cases and finding the risk multiplier fell between 1.0 and 4.0 in 83% of cases, with a range of 0.6–19.6), and at 1050 n.5 (noting class counsel should not necessarily "receive a lesser fee for settling a case quickly").

### 2. Litigation Costs and Expenses

Next, Plaintiffs seek $43,410.76 in out-of-pocket costs for ordinary case-related expenses. Plaintiffs provide these expenses in an itemized breakdown. *See* Richter Decl. (ECF 138-1) ¶ 27. The Court finds Plaintiffs' requested litigation costs and expenses are reasonable and were necessary for effective representation of the class. *See* Fed. R. Civ. P. 23(h); *Theriot v. Celtic Ins. Co.*, No. 10-cv-04462-LB, 2011 WL 1522385, at *7 (N.D. Cal. Apr. 21, 2011) ("Class counsel are entitled to reimbursement of reasonable out-of-pocket expenses.").

### 3. Settlement Administration Expenses

Plaintiffs also seek to recover settlement administration expenses totaling $75,970, which includes:

- $52,470 paid to Analytics Consulting, LLC to administer the settlement;
- $3,500 paid to Alerus Financial to serve as an escrow agent; and
- $20,000 paid to Nick Saakvitne to perform the role of independent fiduciary.

These figures were included in the settlement agreement, meaning all parties and class members had an opportunity to review and comment on them. Class counsel declares it solicited bids from five settlement administration firms and selected Analytics based on its experience handling class action settlements and because its bid was the most competitive. Richter Decl. (ECF 138-1) ¶ 30. The $52,470 expense amounts to less than 0.375% of the $14 million settlement fund and approximately $2.31 per settlement class member. *Id.* ¶ 31. Class counsel also declares its satisfaction with Alerus and Saakvitne's performances of their respective duties and the reasonableness of their rates. *Id.* ¶¶ 33–34.

Resulting from the parties' negotiations and being subject to reasonable opportunity for comment and objection, the Court finds that $75,970 is a fair and reasonable expense to administer the settlement.

### 4. Service Awards

Finally, Plaintiffs ask the Court to award each of the eight class representatives $7,500 for their service as representatives, totaling $60,000. Class representative awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958–959 (9th Cir. 2009). In making the discretionary determination whether to grant such an award, the district court considers relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

Here, class counsel attested to each representative's cooperation and work in this case, averring that Mr. Johnson, Mr. Perry, Ms. Weir, Ms. White, Mr. Salisbury, Mr. Hitt, Ms. Collier, and Mr. Laine each (1) provided information to class counsel prior to filing the case and reviewed the allegations in the operative complaints, (2) produced documents in response to discovery requests, (3) responded to interrogatories, (4) communicated with class counsel during the course of the case and remained informed about the case, (5) communicated with class counsel during the mediation process, (6) discussed the settlement with class counsel, (7) read and approved the settlement agreement, and (8) submitted declarations in support of the settlement in conjunction with preliminary approval. Richter Decl. (ECF 138-1) ¶ 36.

The Court agrees with class counsel that this effort merits a service award, and finds that $7,500 is reasonable and appropriate compensation for the work and risk undertaken by spearheading this litigation as class representatives. *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving $5,000 to two plaintiff representatives of 5,400 potential class members in $1.75 million settlement); *Hopson v. Hanesbrands, Inc.*, No. 08-cv-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3,

Case No. 16-cv-03698-NC    13

1  2009) (approving $5,000 award to one member of 217-member class from $408,420

2  settlement amount); *Glass v. UBS Fin. Servs.*, No. 06-cv-4068-MMC, 2007 WL 221862, at

3  * 16–17 (N.D. Cal. Jan. 26, 2007) (approving $25,000 award to each of four plaintiff

4  representatives of 13,176-member class from $45 million settlement amount); *Thieriot*,

5  2011 WL 1522385, at *8 (approving a $25,000 service award for one class member in a

6  $1.375 million settlement); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D.

7  Cal. 1995) (approving $50,000 award in $76,723,213.26 settlement amount).

## III. Conclusion

For the reasons stated above, the Court CERTIFIES the proposed settlement class and GRANTS Plaintiffs' unopposed motion for final approval of the class action settlement on the terms set forth in the settlement agreement, ECF 128-10, as amended at ECF 147.

The Court GRANTS Plaintiffs' unopposed motion for attorneys' fees and other expenses, to be paid from the net settlement amount. The Court awards $3,500,000.00 in attorneys' fees; $43,410.76 in out-of-pocket litigation expenses; $75,970.00 in settlement administration expenses; and $60,000.00 in class representative service awards. The total award is $3,679,380.76.

Within 30 days of the settlement administrator completing the dispersal of funds to class members, Plaintiffs must submit to the Court a status report on: (1) the amount of money dispersed and the amount of money left in the common fund; (2) the number of class members that received a payment, and the number that did not; and (3) any other updates that might assist the Court in overseeing the fair and just administration of the settlement.

A separate judgment will issue. The clerk of court is directed to close this case.

**IT IS SO ORDERED.**

Dated: May 11, 2018

NATHANAEL M. COUSINS
United States Magistrate Judge

Case No. 16-cv-03698-NC                    14